**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Miguel Gabriel AYARZA,**
**Defendant–Appellant.**

**No. 88–3123.**

United States Court of Appeals,
Ninth Circuit.

Argued Jan. 10, 1989.

Submitted April 21, 1989.

Decided May 9, 1989.

Joseph W. Bottini, Asst. U.S. Atty., Anchorage, Alaska, for plaintiff-appellee.

Nancy Shaw, Asst. Federal Public Defender, Anchorage, Alaska, for defendant-appellant.

Before WRIGHT, TANG and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Appellant Miguel G. Ayarza appeals his conviction of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1982), and his sentence of 78 months imprisonment, four years of supervised release, and a $3500 fine. Appellant entered a conditional plea of guilty, reserving his right to challenge the district court's denial of his motion to suppress evidence seized by Alaska State Troopers after they exposed his carry-on luggage to trained narcotics detection dogs. Further, Appellant challenges the propriety of his sentence, which the district court imposed according to the terms of the Sentencing Guidelines. The district court had jurisdiction of this case under 18 U.S.C. § 3231 (1982). We have jurisdiction under 28 U.S. C. § 1291 (1982). We affirm.

## I

### A

One month prior to arresting Appellant, Trooper Al Storey had observed him conversing with United Airlines ticketing agents. Trooper Storey's attention had been drawn to Appellant because the agents had denied him access to a flight bound for New York, believing him to be under the influence of a controlled substance. One month later Trooper Storey's attention was again drawn to Appellant after ticketing agents told Trooper Storey that Appellant had returned and was again bound for New York, but that his ground time would be less than eight hours. Trooper Storey did not see Appellant board the aircraft, but the agents at the gate described Appellant and told him that Appellant's luggage consisted only of a small carry-on bag.

Through the use of airline reservation computers Trooper Storey was able to determine that Appellant arrived in, and departed from, New York according to his itinerary. Trooper Storey was able to determine further that Appellant's flight arrived in Seattle, Washington too late for him to catch his connecting flight to Anchorage, but that Appellant had been reassigned a seat in row eleven of a flight that would arrive in Anchorage the following afternoon. Trooper Storey was waiting at the gate when Appellant was the first passenger to disembark from this flight.

Trooper Storey followed Appellant as he walked quickly through the concourse, leaving the other passengers far behind. Trooper Storey noticed that slung over Appellant's shoulder was a large garment bag that he believed did not match the description of the small carry-on bag that Appellant had with him when he departed from Anchorage. Trooper Storey further observed that Appellant's pace quickened as he walked through a glassed-in hallway, and that Appellant repeatedly glanced at the window, which by that time of day reflected the interior of the concourse. Trooper Storey also observed Appellant walk to the far left of the exit area where the airport's security monitor was posted.

Appellant proceeded to the first available exit on the upper level of the terminal and, as he passed through the door, he looked over his shoulder to see that Trooper Storey was following him. Appellant stopped at the curbside and looked to his left as though expecting somebody to pick him up. Trooper Storey approached Appellant at that time, identified himself as a law enforcement officer, and asked Appellant if he could speak to him. Appellant gave an affirmative response. Trooper Storey advised Appellant that he was not under arrest and that he could leave without saying anything more. Appellant declined to leave.

Trooper Storey first asked appellant if he could see some identification. Trooper Storey observed Appellant sort through various documents in his billfold, including what appeared to be an Alaska identifica-

tion, before extracting a California driver's license. Trooper Storey asked Appellant where he had traveled from and Appellant replied that he had come from Seattle. Trooper Storey then asked Appellant the purpose of his visit and Appellant replied that he had visited a sick aunt. When Trooper Storey asked Appellant if his aunt lived in Seattle, Appellant replied that his aunt lived in New York and had recently had an operation for the removal of corns on her feet. Appellant explained that he had gone for two days. Trooper Storey noticed that Appellant's nervousness heightened when, in response to Appellant's query, Trooper Storey explained that he was conducting a drug investigation. Appellant then explained to Trooper Storey that he had come directly outside of the terminal in order to catch a cab. Trooper Storey knew, however, that cabs usually pick up passengers at the lower level of the terminal.

At this point Trooper Storey asked Appellant if he would allow his bag to be exposed to a scent detection canine. Appellant hesitated, replying that he wanted to contact his attorney. Trooper Storey allowed him to make a phone call, but required him to position the garment bag so that it was not concealed from Trooper Storey's view. When Appellant returned he told Trooper Storey that his attorney advised him not to allow the search unless he was placed under arrest. Trooper Storey then told Appellant that he was free to go, but that he was going to detain the garment bag and expose it to a scent detection canine. He further explained that Appellant could accompany him and that at most the procedure would take thirty to forty minutes. When Appellant declined, Trooper Storey advised Appellant that the bag would be returned immediately if the dog did not alert to its contents. Trooper Storey offered Appellant a receipt for the bag, but Appellant declined to accept one.

Trooper Storey took possession of the bag and a few minutes later exposed it to "Irma," who alerted positively to the odor of a controlled substance contained in the bag. Trooper Bowman, who had joined Trooper Storey toward the end of his con-

versation with Appellant, then exposed the garment bag to "Meik," who also alerted positively to the odor of a controlled substance contained in the bag. The Troopers then obtained a search warrant, opened the bag, and found a large, rectangular object rolled up in some clothing items. White crystalline powder found inside the object field-tested positive for the presence of cocaine. A subsequent analysis confirmed that 1005.7 grams of cocaine were contained in Appellant's garment bag.

**B**

Appellant filed a motion in the district court to suppress the evidence of cocaine on the grounds that Trooper Storey's conduct in detaining Appellant's garment bag amounted to an unreasonable search and seizure, contravening the fourth amendment to the United States Constitution. The district court referred the matter to a magistrate who, after conducting an evidentiary hearing, recommended that the motion be denied. The magistrate reasoned that Trooper Storey had reasonable, articulable suspicion to believe that criminal conduct was in progress, and that many of the so-called "drug courier profile" factors supported this suspicion. Over Appellant's objection the district court adopted the magistrate's recommendation.

Before receiving his sentence Appellant filed a motion challenging the constitutionality of the 1984 Sentencing Reform Act. The district court ruled that the Act was constitutional, and therefore denied Appellant's motion. Appellant also filed a motion for a downward adjustment of the sentence required by the Sentencing Guidelines, arguing that his cooperation with the authorities warranted an exemption. Over Appellant's due process objection, the district court ruled that the exemption could not be made except by motion of the Government. Pursuant to his conditional plea of guilty, Appellant appeals the district court's denial of each of these motions.

**II**

**A**

We review de novo to determine whether

under the stated facts [1] Trooper Storey had reasonable and articulable suspicion for detaining appellant's garment bag. *United States v. Erwin*, 803 F.2d 1505, 1509–10 (9th Cir.1986). At bottom, this issue involves "balancing the amount of intrusion upon individual privacy," *Florida v. Royer*, 460 U.S. 491, 515, 103 S.Ct. 1319, 1333, 75 L.Ed.2d 229 (1983) (Blackmun, J., dissenting), against the public's "compelling interest in detecting those who would traffic in deadly drugs for personal profit," *United States v. Mendenhall*, 446 U.S. 544, 561, 100 S.Ct. 1870, 1881, 64 L.Ed.2d 497 (1980) (opinion of Powell, J.). The problem is best illustrated by envisioning a three-tier structure, at the bottom of which lies the government's authority to stop and question any individual, for any reason, "[a]s long as the person to whom questions are put remains free to disregard the questions and walk away." *Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877 (opinion of Stewart, J.). At the top of the structure lies the government's authority to effectuate an arrest, but only for "probable cause." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964). And in between these two extremes lies the government's authority to detain an individual or his possessions for purposes of furthering a valid investigation, the scope of which is circumscribed by the officer's reasonable and articulable suspicion. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968); *United States v. Place*, 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983).

Each of these three tiers may be implicated in a single sequence. For example, an officer may initiate a conversation with an individual who has every reason to believe that he is free to leave. *See, e.g., Mendenhall*, 446 U.S. at 555, 100 S.Ct. at 1878 (opinion of Stewart, J.) ("nothing in the record suggests that respondent had any objective reason to believe that she was not free to end the conversation in the concourse and proceed on her way, and for that reason we conclude that the agents'

initial approach to her was not a seizure"). Nevertheless, this conversation may evolve into a situation where the individual's ability to leave dissipates. If the officer restrains an individual's ability to leave or limits his freedom to control his property, he is justified in doing so only by the presence of reasonable suspicion. *See, e.g., Florida v. Rodriguez*, 469 U.S. 1, 6, 105 S.Ct. 308, 311, 83 L.Ed.2d 165 (1984) (per curiam) ("Assuming, without deciding, that after respondent agreed to talk with the police, moved over to where his cohorts and the other detectives were standing, and ultimately granted permission to search his baggage, there was a 'seizure' for purposes of the Fourth Amendment, we hold that any such seizure was justified by 'articulable suspicion.' "). Even if this requirement is met, however, the circumstance may escalate into what essentially constitutes an arrest. Unless the officer has "probable cause" by this point, the arrest violates the fourth amendment. *See, e.g., Florida v. Royer*, 460 U.S. 491, 503, 507, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983) (opinion of White, J.) ("As a practical matter, Royer was under arrest" by the time officers questioned him in an interrogation room, and under the circumstances the prosecution could not justify his "custody by proving probable cause.").

■ Applying these principles to the circumstances at hand, we conclude that a reasonable person in Appellant's position would have believed himself free to ignore Trooper Storey's initial questioning. *Cf. United States v. $25,000 U.S. Currency*, 853 F.2d 1501, 1505 (9th Cir.1988) (suspect "was not seized for purposes of the fourth amendment at the time of the initial encounter nor at the time he was asked for his airline ticket and identification"); *Erwin*, 803 F.2d at 1508 ("a reasonable person in Erwin's position [who had been stopped in an airport parking lot and asked for identification and plane tickets] would have considered himself free to leave"). By the time Trooper Storey told Appellant

---

**1.** Neither party contests the district court's findings of fact, and therefore we assume that the stated facts are not clearly erroneous. *Cf. Unit-* *ed States v. Sokolow*, 831 F.2d 1413, 1417 & n. 3 (9th Cir.1987), *rev'd on other grounds*, —— U.S. ——, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

that he would have to detain his luggage, however, the situation had evolved into one where Trooper Storey needed reasonable suspicion. *Cf. id.* at 1509 ("the seizure of Erwin's day pack required only reasonable suspicion, not probable cause"). Assuming for the moment that this prerequisite was satisfied, Trooper Storey's exposure of Appellant's garment bag to a canine sniff test, conducted promptly after inviting Appellant to observe, was within the permissible scope of the investigatory stop. *Id.; cf. Place*, 462 U.S. at 710, 103 S.Ct. at 2646 (90–minute detention of Place's luggage deemed unreasonable, especially because agents failed to inform Place of the details of the procedure or how he could recover his luggage in the event the investigation dispelled the officers' suspicion). Moreover, the positive result of this test supplied probable cause to obtain a search warrant for the full search of the garment bag. *See id.* at 701, 103 S.Ct. at 2641 (law enforcement officers who have probable cause to believe a container holds contraband, but who have not obtained a warrant, may seize the container until a warrant is properly issued). In short, the seizure of the cocaine from Appellant's garment bag was lawful unless, upon further analysis, we conclude as a matter of law that Trooper Storey did not have reasonable and articulable suspicion—at the time he asked Appellant to consent to a canine sniff test—that Appellant's garment bag contained narcotics.

### B

The government argues that Trooper Storey had reasonable and articulable suspicion to believe that Appellant was transporting narcotics based on his knowledge that Appellant's conduct matched various factors of the "drug courier profile," including: (1) Appellant scheduled a two-day trip to a known drug source city with a ground time of only eight hours; (2) he deplaned first even though he was seated in the eleventh row of the aircraft; (3) he carried only carry-on luggage and returned with a bag different than the one he carried on the date he departed; (4) he appeared nervous and walked at a rapid pace through the terminal; (5) he repeatedly glanced at the reflection in the concourse window in an effort to detect surveillance; (6) he exited the terminal at the top level even though taxi service was generally available at the bottom level; (7) he avoided revealing that his trip was to New York; (8) he produced a California identification even though Trooper Storey saw him pass over an Alaska identification; and (9) he offered an implausible excuse for traveling so far for so little time.

The government relies mainly on our decision in *United States v. Erwin*, 803 F.2d 1505, 1509–10 (9th Cir.1986), to support its argument that these factors, viewed collectively, establish the requisite reasonable suspicion needed to detain Appellant's luggage. In *Erwin* we concluded that enforcement officers had reasonable suspicion to detain luggage based on Erwin's long distance trip for only a brief time period; he traveled alone and carried only a day pack; he scanned the passenger area after deplaning; he walked erratically through the terminal at a quick pace; he backtracked through the baggage claim area without picking up any luggage; he appeared nervous when questioned; and he offered an implausible excuse for his conduct. *See id.* at 1506–07. The government argues that the nearly identical circumstances of *Erwin* warrants a conclusion that Trooper Storey's detention of Appellant's luggage was supported by reasonable suspicion.

Appellant, on the other hand, distinguishes *Erwin* from the facts of this case because, unlike here, Erwin took a circuitous route through the airport in an effort to evade detection. According to Appellant, this factor is persuasive evidence of an "ongoing" criminal enterprise that is needed before a conclusion of reasonable suspicion can be found. Appellant thus argues that this case is controlled by our decision in *United States v. Sokolow*, 831 F.2d 1413 (9th Cir.1987), *rev'd*, —— U.S. ——, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), in which we held that "reasonable suspicion may be founded upon evidence of ongoing criminal behavior," which may only then be

"supplemented by other aspects of the [drug courier] profile that would not by themselves create reasonable suspicion." *Id.* at 1421. Appellant's counsel conceded at oral argument, however, that the proper course in this case was to postpone consideration of this contention until the Supreme Court had the opportunity independently to consider the rule announced in *Sokolow.*

The Supreme Court has now issued its ruling in that case, which clearly disapproves segmenting the evidence into that which indicates "ongoing" criminal activity and that which does not. *United States v. Sokolow,* —— U.S. ——, ——, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1 (1989). Such a rigid formula, according to the Court, seems only "to draw a sharp line between types of evidence, the value of which varies only in degree." *Id.* Because "reasonable suspicion" cannot be " 'readily, or even usefully, reduced to a neat set of rules,' " the Court reiterated its oft expressed belief that the ultimate determination depends solely on the " 'totality of the circumstances.' " *Id.* (quoting *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed. 2d 527 (1983), and *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). Our disposition of this case is controlled by the Court's reasoning. Therefore, we need not dispute counsel's argument that each factor known to Trooper Storey, if viewed alone, was consistent with wholly innocent activity. *Cf. Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980) (three drug profile characteristics described "a very large category of presumably innocent travelers," and a fourth factor was insufficient on the facts of that case to establish reasonable suspicion). We conclude instead that these factors, viewed collectively, support a finding that Trooper Storey had reasonable suspicion to believe that Appellant was transporting narcotics. *See Sokolow,* —— U.S. at ——, 109 S.Ct. at —— (although none of the factors "by itself [is] proof of any illegal conduct," "taken together they amount to reasonable suspicion").

Important to our decision is the district court's finding that Trooper Storey was able to track Appellant through the airline reservation system and confirm that his ground time in a known drug source city was very short compared to his flight time. *Cf. id.* ("surely few residents of Honolulu travel from that city for 20 hours to spend 48 hours in Miami during the month of July"). Also important is the fact that Appellant offered an implausible excuse when asked about his travel arrangements. *Cf. Erwin,* 803 F.2d at 1510–11 (explanation for weaving through airport implausible); *see also Florida v. Rodriguez,* 469 U.S. 1, 6, 105 S.Ct. 308, 311, 83 L.Ed.2d 165 (1984) (per curiam) (suspects contradicted themselves when questioned about their identities). These two factors, combined with the others, leaves us with the impression that Trooper Storey reasonably suspected that Appellant's conduct was inconsistent with innocent activity. We therefore find unconvincing Appellant's argument that Trooper Storey lacked reasonable suspicion simply because he neither traveled under an alias nor avoided detection by walking on a circuitous route through the airport terminal. *Cf. United States v. Mendenhall,* 446 U.S. 544, 563–66, 100 S.Ct. 1870, 1882–83, 64 L.Ed.2d 497 (1980) (opinion of Powell, J.) (inter alia, suspect deplaned last on a flight arriving from a known drug source city and appeared nervous as she scanned the concourse). We hold that the district court properly rejected Appellant's motion to suppress evidence because Trooper Storey had reasonable suspicion, under the totality of the circumstances, to detain Appellant's garment bag and subject it to a canine sniff test.

### III

■ The district court rejected Appellant's challenge to the constitutionality of the 1984 Sentencing Reform Act. On appeal Appellant relies on our decision in *Gubiensio–Ortiz v. Kanahele,* 857 F.2d 1245 (9th Cir.1988), *vacated,* —— U.S. ——, 109 S.Ct. 859, 102 L.Ed.2d 984 (1989), *on remand,* 871 F.2d 104 (9th Cir.1989) (per curiam), to argue that the district court's decision was erroneous and therefore his case should be remanded for resentencing. Our decision in *Gubiensio* is no longer

valid law, *see* 871 F.2d at 104; *Mistretta v. United States,* — U.S. — , 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), and therefore we cannot accept Appellant's contention. Appellant argues alternatively that the district court erred in rejecting his motion for a downward adjustment to the sentence based on his "substantial assistance in the investigation or prosecution of another," as permitted in section 5K1.1 of the Sentencing Guidelines and also in section 3553(e) of Title 18. Each of these provisions, however, explicitly conditions such a downward adjustment "upon motion of the government"—a prerequisite that is not met here.

Appellant argues nonetheless that this prerequisite violates the doctrine of separation of powers by delegating to prosecutors the unbridled discretion to decide who is entitled to a sentencing reduction.[2] A similar argument was considered and rejected in *United States v. Severich,* 676 F.Supp. 1209 (S.D.Fla.1988), *aff'd,* 872 F.2d 434 (11th Cir.1989). The district court there adopted the magistrate's reasoning that the sentencing process is not inherently judicial and that, even if it were, the government's authority to recommend a reduced sentence was not impermissibly obtrusive. *Id.* at 1212–13. To the same effect is the Eleventh Circuit's decision in *United States v. Musser,* 856 F.2d 1484 (11th Cir.1988), *cert. denied,* — U.S. — , 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989), in which the court noted that there is no "constitutional right" to the availability of a substantial assistance provision, "and hence no grounds upon which to challenge Congress' manner of enacting it." *Id.* at 1487. We find the reasoning of these decisions persuasive.

Appellant also argues that section 3553 and section 5K1.1 violate his constitutional right to due process. Again, this argument was considered and rejected in *Severich* because, according to the magistrate's reasoning, the defendant's liberty interests un-

der *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), and *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), gave way "to the antidrug abuse strategies advanced by Congress." *Severich,* 676 F.Supp. at 1214. The magistrate believed, as the Government argues here, that it is rational for Congress to lodge some sentencing discretion in the prosecutor, the only individual who knows whether a defendant's cooperation has been helpful. *See also Musser,* 856 F.2d at 1487. We agree. Therefore we hold that section 3553 and section 5K1.1 are not unconstitutional insofar as they allow only the Government to seek a departure from the minimum mandatory sentence to reflect a defendant's "substantial assistance."

### IV

The district court did not err in denying Appellant's motion to suppress evidence, and it correctly rejected Appellant's motion for a downward adjustment of his sentence. Accordingly his conviction and sentence are AFFIRMED.

---

**2.** Appellant also suggests that section 5K1.1 is an invalid exercise of the Sentencing Commission's delegated authority because 28 U.S.C. § 994(n) (Supp. III 1985), which empowers the Sentencing Commission to provide for downward adjustments to account for a defendant's "substantial assistance," does not limit the district court's sentencing discretion to motions brought by the government. We believe that the Sentencing Commission did not exceed its authority in drafting such a requirement in view of the fact that Congress itself drafted section 3553 the same way.