891 F.2d 296
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clarence Douglas MALCOLM, Defendant-Appellant.
 No. 88-5473.
 United States Court of Appeals, Ninth Circuit.
 Dec. 8, 1989.
 
 Before ALARCON, O'SCANNLAIN, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Clarence Douglas Malcolm appeals from the district court's denial of his motion to suppress evidence and his subsequent conviction for manufacturing and possessing counterfeit currency, in violation of 18 U.S.C. §§ 471 and 472.
 
 
 3
 Malcolm claims the district court erred in (1) upholding the validity of the initial attempt by the police to stop the van in which Malcolm was a passenger; and (2) denying his motion to suppress the fruits of the search of a vehicle into which Malcolm and codefendant Williams had been seen loading boxes. We affirm.
 
 
 4
 * On Saturday, April 9, 1988, at approximately 7:40 A.M., Kenneth Bramblett, the production supervisor of Gateway Business Forms Company (Gateway), telephoned the South Gate Police Department. He reported that he had witnessed suspicious activity on the street in front of Gateway at 5110 Firestone Place. Officer Ronald J. Inman and Officer Frank LaVigne of the South Gate Police Department went to Gateway to interview Bramblett. Bramblett related that when he arrived at his job at 5:45 A.M., he was told by some of his employees that a maroon car had been parked across the street since approximately 4:30 A.M. The employees told him that this was unusual because the building the car was parked in front of was closed for the day. At approximately 6:30 A.M., the supervisor saw a white man in a business suit (Malcolm) and a black man in dirty clothes (Williams) loading large metal boxes from a white van into the maroon car. The car was then driven the car across the street where it was parked in front of Gateway Building 5101. The white man then got into the back of the van. The black man drove the van away.
 
 
 5
 After interviewing Bramblett, the police officers went over to the car and looked inside. On the back seat, they saw a large closed metal air shipping box and a sport coat covering an object. On the front floorboard, they saw a pair of four foot long bolt cutters.
 
 
 6
 After viewing the interior of the maroon car, the officers returned to their vehicles. Officer LaVigne drove his police car back to the place where Bramblett was standing. Officer Inman asked Bramblett to describe the van. Bramblett stated that it was a panel van. He then said, "As a matter of fact, here comes the van now." Officer LaVigne saw a van proceeding in a southwest direction on Firestone Place toward the intersection of that street with Firestone Boulevard. Bramblett told Officer LaVigne that the driver appeared to be the same person who drove the van that morning.
 
 
 7
 Officer LaVigne radioed to Officer Inman to try to stop the van. Officer LaVigne then followed the van and turned on his emergency lights. As the van approached the other police vehicle, Officer Inman blocked the street and turned on his overhead lights and siren. The van turned into the Gateway parking area. Using the police car's public address system, Officer Inman then ordered the driver of the van to stop. Instead, the van accelerated and drove up and down the parking lot aisles. Both police vehicles followed the van.
 
 
 8
 The chase ended when the van drove into a parking lot aisle that had no exit and the vehicle crashed into a barbed wire fence. Williams, the driver, jumped on top of the van, leaped over the fence, and escaped. Malcolm, the passenger, also attempted to escape. A police dog seized Malcolm's foot as he tried to climb onto the roof of the van. Malcolm temporarily escaped from the dog and attempted to jump over the fence. He became entangled in the concertina wire. The dog pulled Malcolm off the fence. Malcolm was taken into custody.
 
 
 9
 Officer Inman testified that Malcolm was then searched as an incident to an arrest for evading arrest pursuant to section 2800.1 of the California Vehicle Code and for resisting arrest pursuant to section 148 of the California Penal Code. The officers found the keys to the maroon car in Malcolm's pocket. The officers then unlocked the door to the vehicle. In attempting to remove the closed air shipping box, it spontaneously opened and about 20 sheets of printed money fell out. Metal plates bearing 20, 50 and 100 dollar denominations matching the currency were also found in the box.
 
 II
 
 10
 Malcolm claims that the district court erred in finding that the police officers had a founded suspicion when they attempted to make an investigatory stop of the van at the time they turned on their overhead lights and sirens. We disagree.
 
 
 11
 We review the district court's ruling on the legality of an investigative stop de novo. United States v. Ayarza, 874 F.2d 647, 649-50 (9th Cir.1989). We review the findings of fact on which the district court based its conclusion for clear error. United States v. Feldman, 788 F.2d 544, 550 9th Cir.1986), cert. denied, 479 U.S. 1067 (1987).
 
 
 12
 Police officers may briefly detain a moving vehicle for investigatory purposes if, under the totality of the circumstances, they know of specific, "articulable facts leading to a reasonable or founded suspicion that the person has been, is or is about to be engaged in criminal activity." United States v. Fouche, 776 F.2d 1398, 1402 (9th Cir.1985), (citing Terry v. Ohio, 392 U.S. 1, 22 (1968)). The test is not whether the questionable conduct is consistent with innocent behavior, but whether, in considering the "totality of the circumstances", it amounts to suspicious activity justifying an investigatory stop. United States v. Sokolow, --- U.S. ----, ----, 109 S.Ct. 1581, 1585 (1989). This standard is met when "practical people formulat[ing] certain common-sense conclusions about human behavior" could conclude that the suspicious behavior probably amounts to criminal activity. United States v. Cortez, 449 U.S. 411, 418 (1981).
 
 
 13
 The facts in this case " 'justify the suspicion that criminal activity was afoot.' " United States v. Sokolow, --- U.S. at ----, 109 S.Ct. at 1586 (quoting Reid v. Georgia, 448 U.S. 438, 441 (1980) (per curiam)). Before the officers attempted to detain the van, they were aware of a series of events that gave rise to the minimal level of objective justification required for making an investigatory stop. A citizen informant reported that he had observed a car parked in an isolated area in the early morning hours on a weekend. Malcolm and Williams were observed loading metal boxes from the van into the car. The car was then moved across a street and parked. One man rode in the back of the van rather than in the passenger seat. When the police responded to the report, they observed a metal box, an object covered by a sportcoat, and a pair of large bolt cutters on the floorboard.
 
 
 14
 While any one of these facts may seem innocent, in and of itself, when taken together they form the basis for a reasonable, articulable suspicion of criminal activity. United States v. Sokolow, 109 U.S. at 1586. The district court stated that "under the circumstances, the time, the place, just the entire operation, ... it is more logical to believe, quite frankly, that something illegal was going on." We agree with the district court that the police officers were justified in attempting to make an investigatory stop.
 
 III
 
 15
 Malcolm also asserts that the district court erred in finding that the police officers had probable cause to justify the warrantless search of the car.
 
 
 16
 We review the question whether probable cause existed for a search and seizure de novo. United States v. Linn, 862 F.2d 735, 739 (9th Cir.1988). We review the district court's findings of fact for clear error. Id. at 740. The existence of probable cause is judged on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238 (1983).
 
 
 17
 The Supreme Court has instructed that a warrant is not required to search a movable vehicle in a public place if probable cause exists to believe that it contains evidence of a crime. California v. Carney, 471 U.S. 386, 390-94 (1985). We have interpreted Carney to validate warrantless searches of automobiles parked in public places on probable cause even if the owner or occupant is not in the vicinity. United States v. Miller, 812 F.2d 1206, 1208 (9th Cir.1987); United States v. Normandeau, 800 F.2d 953, 957 (9th Cir.1986); United States v. Bagley, 772 F.2d 482, 491 (9th Cir.1985), cert. denied, 475 U.S. 1023 (1986). If police officers have probable cause to believe that a vehicle contains evidence of a crime, "they may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant." United States v. Ross, 456 U.S. 798, 800 (1981); see Warden v. Hayden, 387 U.S. 204, 300-310 (1967) (mere evidence of a crime may be seized if probable cause exists). The search may include any containers and packages found inside the vehicle because contraband items "rarely can be placed in an automobile unless they are enclosed in some form of container." United States v. Ross at 820. Because of the mobility of automobiles and the reduced expectation of privacy associated with them, "the overriding societal interests in effective law enforcement justify an immediate search before the vehicle" becomes unavailable. California v. Carney, 471 U.S. at 392-93.
 
 
 18
 In this case, the officers had probable cause to believe that a crime or crimes had been committed and that evidence of the Malcolm's suspected illegal activity could be found in the car. The initial report came from a citizen-informant, a source considered reliable upon independent police corroboration. United States v. Angulo-Lopez, 791 F.2d 1394, 1397 (9th Cir.1986). The informant related that Malcolm and Williams had loaded metal boxes into the car, an activity made suspicious by the surrounding circumstances. The officers corroborated the citizen-informant's percipient observations when they viewed the contents of the car. When the police attempted to detain Malcolm and Williams for questioning, they sped off in the van, led the officers in a chase, abandoned their vehicle when they were blocked by a fence, and then attempted to escape on foot. See United States v. Garcia, 516 F.2d 318, 320 (9th Cir.1975) (together with knowledge that defendant was driving car of a type commonly used to smuggle aliens, that he failed to slow down at a border checkpoint, and that he feigned compliance with an order to proceed to a secondary inspection stop, "the flight and high-speed chase clearly supplied probable cause to arrest").
 
 
 19
 When Malcolm was arrested, a lawful search incident to arrest turned up the keys to the car. The totality of the circumstances established the requisite probable cause to search the car. Our independent review of the evidence has persuaded us that probable cause existed for the search of Malcolm's vehicle. The district court did not err in denying the motion to suppress.
 
 
 20
 Because we have found that there was probable cause for the search of the vehicle, we do not determine whether the district court was correct in concluding that exigent circumstances justified the search of the vehicle or whether the officers conducted a proper inventory search. See United States v. Feldman, 788 F.2d at 553 n. 11. (in upholding the validity of an inventory search, "we need not reach the government's alternative justifications for the search").
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument pursuant to Fed.R.App.P. 34(a), Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3