958 F.2d 379
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry M. LARSON, Defendant-Appellant.
 No. 91-50089.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 5, 1991.
Decided March 27, 1992.
 
 Before JAMES R. BROWNING, FERGUSON and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant Larson appeals the denial of his motion to suppress his confession and the methamphetamine found in his duffel bag. We review denial of a motion to suppress de novo, see United States v. Thomas, 863 F.2d 622, 625 (9th Cir.1988), but accept the underlying factual findings unless clearly erroneous, United States v. Davis, 905 F.2d 245, 250 (9th Cir.1990).[1]
 
 I.
 
 3
 Larson maintains the methamphetamine should have been suppressed because the encounter at the bus station was not consensual and therefore the detectives needed reasonable suspicion to detain and question him, which they did not have. Because the requisite reasonable suspicion was lacking, he contends, his consent to the search was "tainted by the illegality [of his detention] and was ineffective to justify the search." Florida v. Royer, 460 U.S. 491, 508 (1983) (plurality opinion).
 
 
 4
 Police officers need no particular quantum of suspicion to stop and question a citizen, so " 'long as the person to whom questions are put remains free to disregard the questions and walk away.' " United States v. Ayarza, 874 F.2d 647, 650 (9th Cir.1989) (citation omitted). The detectives' testimony established that Larson consented to be questioned, was told he was free to leave, and was not restrained from leaving in any way. See, e.g., Florida v. Royer, 460 U.S. at 504 (plurality opinion); United States v. Safirstein, 827 F.2d 1380, 1382-83 (9th Cir.1987).
 
 
 5
 Although Larson claims he accompanied the detectives off the bus only because he felt "intimidated," he admits the detectives told him he was not in any trouble and was free to go. Further, although Larson claims he was frisked after he left the bus, ordered to face the wall, and required to surrender his bus ticket and identification, the detectives testified they again informed him he was free to leave and did not frisk him, order him to face the wall, hold his bus ticket and identification for more than a "minute and a half at the most," or in any other way restrain him from leaving. The district court acted within its authority in accepting the testimony of the detectives as more plausible and in concluding the encounter was consensual.[2]
 
 II.
 
 6
 Larson maintains he was not advised of his constitutional rights before he was subjected to custodial questioning. Detective Brady testified Larson was questioned at the police station at about 7:00 or 7:15 p.m. Brady also testified Gonzales, the man arrested with Larson, was released at about 7:45 p.m., after Larson told Brady that Gonzales had nothing to do with transporting the methamphetamine. After defense counsel showed Brady that the confession Larson signed noted that Larson was read his rights, waived them, and confessed at 9:30 p.m., Brady agreed Larson was questioned at 9:30 p.m., after he was fingerprinted. In an attempt to clarify the record, the prosecutor asked, "When was the questioning done ... relative to the rights being given and the fingerprinting being done?" Brady replied, "The fingerprinting was done. Then afterwards I read him his rights and I questioned him again."
 
 
 7
 Brady's statement that he questioned Larson "again" after reading him his Miranda rights is ambiguous: He may have been referring to the questions posed to Larson at the bus station during the consensual encounter or he may have been admitting that Larson was subjected to two rounds of custodial questioning, the first before Larson was advised of his rights. Although it is clear that Larson confessed after he was advised of and waived his rights, the statement that Larson was questioned "again," together with Brady's recollection that Gonzales was released at about 7:45 p.m. after Larson was questioned but that Larson was not read his rights until 9:30 p.m., indicates Larson may have been questioned and made some incriminating statements before he was advised of his rights. Thus, the government did not meet its burden of proving all the statements Larson made while in custody were voluntary. See United States v. Crespo de Llano, 838 F.2d 1006, 1015 (9th Cir.1987).[3]
 
 
 8
 In United States v. Nordling, 804 F.2d 1466, 1472 (9th Cir.1986), the court found the defendant may have made two sets of incriminating statements, one without having waived his rights. The Nordling remedy is appropriate here:
 
 
 9
 Because [Larson] entered a conditional guilty plea and has prevailed in part in this appeal, he must have the opportunity to reconsider his plea. We therefore vacate his conviction and remand the cause. If [Larson] decides to change his plea, his cause should be set for trial. If he does not withdraw the plea, the district court may re-enter the judgment of conviction.
 
 Id.[4]
 VACATED and REMANDED.[5]
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 At oral argument, Larson's counsel contended correctly that because the district court adopted without modification the government's proposed findings of fact and conclusions of law, we review them with special scrutiny. United States v. Ramos, 923 F.2d 1346, 1351 n. 8 (9th Cir.1991). However, even when the district court adopts proposed factual findings verbatim, we give special deference to the court's credibility findings. Id. at 1356
 The court's findings were amply supported by the evidence. Although the government's evidence conflicted at times with Larson's version of events, the court was entitled to find the government's witnesses more credible and to resolve discrepancies in the government's favor. See id.
 
 
 [2]
 We need not reach Larson's claim that, assuming the encounter was not consensual, the requisite reasonable suspicion was lacking
 
 
 [3]
 The district court did not determine whether Larson made any incriminating statements before he was advised of his rights; he found only that Larson was read and waived his rights before he confessed
 
 
 [4]
 We do not decide whether the confession itself, or any other statements made after Larson waived his rights, would be admissible at trial. Should Larson choose to proceed to trial, the district court should determine whether any post-waiver statements were "tainted" by any pre-waiver custodial statements. Cf. Oregon v. Elstad, 470 U.S. 298, 318 (1985) ("[A] suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings.")
 
 
 [5]
 All subsequent appeals will be handled by this panel