959 F.2d 242
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ramon BOLANOS, Defendant-Appellant.
 No. 91-50329.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 7, 1992.
Decided April 2, 1992.
 
 1
 Before ALARCON, BEEZER and RYMER, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Ramon Bolanos pled guilty to possessing with the intent to distribute 1466 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). He appeals from the denial of his motion to suppress the cocaine discovered in his suitcase. We affirm.
 
 I.
 
 4
 Bolanos contends that the Drug Enforcement Agency (DEA) agents did not have reasonable and articulable suspicion of ongoing criminal activity necessary to justify his investigative detention outside of the airport terminal. He further asserts that his placement in a holding cell at the DEA office was an illegal arrest. The Government argues that the initial stop of Bolanos outside the airport was consensual, his subsequent detention was supported by reasonable suspicion, and his arrest was based upon probable cause.
 
 
 5
 In United States v. Ayarza, 874 F.2d 647 (9th Cir.1989), cert. denied, 493 U.S. 1042 (1990), we defined three tiers of police conduct. Id. at 650. Each tier requires a different level of suspicion of criminal activity. A single sequence of events may implicate each of the three tiers. Id. At the lowest tier, a consensual encounter between a citizen and a law enforcement officer does not implicate a Fourth Amendment interest. Florida v. Bostick, 111 S.Ct. 2382, 2386 (1991). "So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." Id. (citations omitted).
 
 
 6
 However, once an officer "restrains an individual's ability to leave or limits his freedom to control his property, he is justified in doing so only by the presence of reasonable suspicion." Ayarza, 874 F.2d at 650. The investigative stop authorized in this "second tier" must be "temporary and last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983).
 
 
 7
 In order to effectuate a valid arrest, an officer must have probable cause. Beck v. Ohio, 379 U.S. 89, 91 (1964). If the circumstances of the investigative stop escalate into what is essentially an arrest, the arrest violates the Fourth Amendment unless the officer has probable cause to arrest. Ayarza, 874 F.2d at 650.
 
 
 8
 Although we review the district court's findings of historical fact for clear error, we must determine de novo whether those facts show an unlawful seizure. United States v. Johnson, 903 F.2d 1219, 1221 (9th Cir.), cert. denied, 111 S.Ct. 520 (1990). When the factual findings depend largely on credibility determinations, we accord special deference to the district court. Spain v. Rushen, 883 F.2d 712, 717 (9th Cir.1989), cert. denied, 110 S.Ct. 1937 (1990).
 
 II.
 
 9
 Bolanos contends that the DEA agents did not have reasonable and articulable suspicion of ongoing criminal activity necessary to justify stopping him outside the airport terminal. Because we conclude that Bolanos' initial encounter with the DEA agents did not implicate a Fourth Amendment interest, we need not decide whether the agents had reasonable suspicion to stop Bolanos outside the airport terminal.
 
 
 10
 The Supreme Court has repeatedly held that not all interactions between police officers and citizens are subject to protection under the Fourth Amendment. "Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions." Bostick, 111 S.Ct. at 2386.
 
 
 11
 In United States v. Mendenhall, 446 U.S. 544 (1980), the Supreme Court held that Mendenhall had not been "seized" for the purposes of the Fourth Amendment. In that case, two DEA agents approached Mendenhall in a public concourse. Id. at 555. The agents did not wear uniforms or display weapons. They requested, but did not demand to see Mendenhall's identification and ticket. Id. The officers failed to inform Mendenhall that she did not have to cooperate with the inquiry. Id. The Court "adhere[d] to the view that a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." Id. at 553.
 
 
 12
 In United States v. Johnson, 903 F.2d 1219, we affirmed the district court's conclusion that Johnson had not been seized for Fourth Amendment purposes. Id. at 1221. There, two officers approached the defendant in a public place, identified themselves, and told him they would like to ask him a few questions. Id. Johnson was informed that he was free to leave, and he indicated that he understood this. Id. The officers did not touch Johnson or block his path. Id.
 
 
 13
 In resolving the instant matter, the district court was confronted with conflicting testimony. We review the district court's factual findings for clear error and defer to the district court's credibility determinations. Spain, 883 F.2d at 717. Here, the district court expressly stated in its findings that it found the testimony of the DEA agents to be consistent and credible while that of the defendant and his sister to be less credible and motivated by self-interest.
 
 
 14
 In accordance with Federal Rule of Criminal Procedure 12(e), the court made the following essential findings: The agents who approached Bolanos and his companions outside the baggage claim area wore plainclothes and did not display weapons or handcuffs. The agent told Bolanos he was not in trouble and was free to leave. Bolanos agreed to answer the agent's questions. Bolanos claimed that he had no ticket, identification or baggage. The record supports these findings.
 
 
 15
 Contrary to Bolanos' contention, the officers were not required to have a reasonable and articulable suspicion of ongoing criminal activity to justify the initial encounter. No seizure of Bolanos' person occurred at the time he was approached by the officers. The officers did not display their weapons or handcuffs. Bolanos was told he was free to leave. Bolanos agreed to answer the officer's questions. These facts demonstrate that the initial encounter was consensual.
 
 
 16
 The district court's finding that reasonable suspicion existed to justify the stop of Bolanos was unnecessary because the record shows that the encounter was consensual. Bostick, 111 S.Ct. at 2386. Under Mendenhall and Johnson, the encounter was proper whether or not the officers could articulate facts showing a reasonable suspicion that Bolanos was engaged in criminal activity before he was approached.
 
 III.
 
 17
 Bolanos contends that the DEA agents lacked reasonable suspicion to take him to the DEA office. He also asserts that he was illegally arrested when the DEA agents placed him in a holding cell at the DEA office. Because we conclude that Bolanos' suitcase was discovered on the basis of information known before these alleged improprieties, we do not consider the merits of these contentions.
 
 
 18
 After questioning Bolanos outside of the airport during the consensual encounter, the agents obtained all of the information necessary to justify a brief detention of Bolanos' suitcase. In order to justify the detention of Bolanos' suitcase, the record must show that the officers possessed a reasonable, articulable suspicion of criminal wrongdoing. "[W]hen the police seize luggage from the suspect's custody, .... the limitations applicable to investigative detentions of the person should define the permissible scope of an investigative detention of the person's luggage on less than probable cause." United States v. Place, 462 U.S. 696, 708-09 (1983). The existence of reasonable suspicion must be determined by considering the totality of the circumstances. United States v. Sokolow, 490 U.S. 1, 8 (1989).
 
 
 19
 We conclude that the agents had a reasonable suspicion of criminal wrongdoing which justified the brief detention of Bolanos' luggage.[1] At the time Bolanos' suitcase was seized, the agents were aware of the following facts: (1) Bolanos' plane originated in a city well-known as a center of drug trafficking; (2) he appeared nervous and looked around constantly upon leaving the plane; (3) he appeared to be traveling alone when he left the plane, but subsequently began talking to Esqueviel Treto (Treto) as they walked towards the exit; (4) Bolanos and Treto appeared to be leaving the terminal area without collecting any luggage; (5) Bolanos told the officers that he did not have any identification or an airline ticket in his possession although he had just arrived in Los Angeles following a cross-country trip; (6) Bolanos had no carry-on luggage; (7) Bolanos stated he had no checked luggage; (8) Treto admitted he was travelling with the defendant; (9) Treto's airline ticket folder had baggage claim ticket number 532829 attached to it; (10) Treto appeared to be leaving the terminal without collecting his baggage; (11) the officers located a suitcase in the baggage claim area which had a baggage claim number 532830 attached to it and an identification tag bearing the name "Ramon Bolan."
 
 
 20
 The foregoing facts, when considered in light of Bolanos' false denial of having a suitcase, and the agents' independent observation of his suspicious conduct, establish reasonable suspicion to detain the suitcase briefly while it was exposed to a dog trained in drug detection.
 
 
 21
 The total time which elapsed from the landing of the flight to the sniffing of Bolanos' briefcase was twenty minutes. This brief detention does not violate the permissible boundaries of an investigative stop. See Place, 462 U.S. at 709-10 (police may briefly detain luggage reasonably suspected to contain narcotics, but the ninety-minute detention in that case exceeded the permissible limits of an investigative stop).
 
 
 22
 Because the agents obtained all of the information necessary to justify a valid seizure of Bolanos' bag during the consensual encounter outside the airport terminal, we need not decide whether reasonable suspicion existed to take Bolanos to the DEA office or whether probable cause existed to arrest him when he was placed in a cell in the DEA office. Bolanos' suitcase was searched based on facts obtained through information and observation obtained prior to the time Bolanos was taken to the DEA office or placed in the holding cell. See Nix v. Williams, 467 U.S. 431, 443 (1984) (independent source doctrine permits admission of evidence that has been discovered by means wholly independent of any constitutional violation).
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Although the government challenged Bolanos' standing to challenge the seizure of his suitcase, it failed to raise the issue on this appeal. Accordingly, the standing issue is waived. See United States v. Carbajal, No. 89-50507, 1992 WL 24097, at * 9 n. 2 (9th Cir. Feb. 14, 1992) (government waived issue of defendant's reasonable expectation of privacy by not raising it on appeal)