980 F.2d 739
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Monica CAMPOS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maria CARRANZA, Defendant-Appellant.
 Nos. 91-50714, 91-50800.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1992.
Decided Nov. 13, 1992.
 
 Before D.W. NELSON, CYNTHIA HOLCOMB HALL and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Maria Carranza and Monica Campos appeal their convictions for violation of 21 U.S.C. § 846, conspiracy to possess cocaine with intent to distribute, and violation of 21 U.S.C. § 841(a)(1), knowing and intentional possession of cocaine with intent to distribute. They argue that the district court improperly denied their motions to suppress physical evidence later introduced at trial. Campos also appeals the district court's refusal to give her a two point reduction at sentencing due to her claimed minor participant status. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and we affirm.
 
 
 3
 * We review de novo the district court's denial of motions to suppress and we uphold the district court's findings of fact unless clearly erroneous. United States v. $25,000 U.S. Currency, 853 F.2d 1501, 1504 (9th Cir.1988). The ultimate conclusion of the lawfulness of a seizure is a mixed question of law and fact that we review de novo. Id. When the district court adopts the findings and conclusions drafted by the prevailing party, we must examine the district court's justifications with "special scrutiny." United States v. Del Vizo, 918 F.2d 821, 824 n. 4 (9th Cir.1990).
 
 
 4
 Police stops under the Fourth Amendment fall into three categories. First, the police may stop and question an individual for any reason "[a]s long as the person to whom questions are put remains free to disregard the questions and walk away." United States v. Ayarza, 874 F.2d 647, 650 (9th Cir.1989) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)), cert. denied, 493 U.S. 1047 (1990). Such brief, consensual encounters need not be supported by any suspicion that the citizen is engaged in wrongdoing, and such stops are not considered "seizures" for Fourth Amendment purposes. Morgan v. Woessner, --- F.2d ----, Nos. 91-55728, 55863 (9th Cir. September 15, 1992). Second, the police may "seize" and "detain an individual or his possessions for purposes of furthering a valid investigation, the scope of which is circumscribed by the officer's reasonable and articulable suspicion." Ayarza, 874 F.2d at 650. Finally, the police may arrest an individual, but only for probable cause. Id.
 
 
 5
 * The first question we must decide is whether the initial encounter with Detective Gillespie at the airline baggage screening area was a seizure within the meaning of the Fourth Amendment. See Terry v. Ohio, 392 U.S. 1 (1968). It was not.
 
 
 6
 The essential inquiry in determining whether a seizure occurred is whether the defendants reasonably believed that they were free to leave. United States v. Johnson, 903 F.2d 1219, 1221 (9th Cir.), cert. denied, 111 S.Ct. 520 (1990). This depends on the facts and circumstances of each case. Id. Here, there is no evidence of any threat, restraint or coercion. Carranza, Campos and their companion were approached by law enforcement agents in United Airlines's secondary screening area after they had been brought there by airline personnel for routine investigation in an unrelated security matter. The district court's findings that Detective Gillespie, prior to any questioning, identified himself as a narcotics officer and told both Carranza and Campos that they were not in trouble, were not under arrest, and were free to leave, are not clearly erroneous. Each voluntarily agreed to answer questions. Id. Based on these findings, we cannot conclude that during the initial interview, a reasonable person in the position of Carranza and Campos would not have believed herself free to leave. United States v. Brown, 884 F.2d 1309, 1311 (9th Cir.1989), cert. denied, 493 U.S. 1025 (1990); see Johnson, 903 F.2d at 1221 (no seizure where "encounter occurred in a public place, the officers did not touch [defendant] or block his path, the officers told [defendant] that he was free to leave, and [defendant] responded that he understood"); United States v. Low, 887 F.2d 232, 234 (9th Cir.1989) ("[o]nly when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has taken place") (quoting Terry v. Ohio, 392 U.S. 1 (1968)).
 
 
 7
 The district court also found that Campos and Carranza voluntarily consented to a search of their luggage. That finding is not clearly erroneous, as the evidence shows that both said the detectives could look inside. Neither Campos nor Carranza was, however, able to produce a key. At this point their luggage was seized and Campos, Carranza and their companion, who also consented to a search of his suitcase but was similarly unable to open the lock, were handcuffed, escorted to the DEA office, and held while a sniff test was conducted.
 
 B
 
 8
 Campos and Carranza argue that an arrest occurred when they were handcuffed, walked across the airport to the DEA office, and held in separate rooms for 30 minutes. In turn, they contend that their luggage could not be seized without probable cause. They rely on United States v. Place, 462 U.S. 696 (1983), claiming that the same limitations applicable to their own detention define the permissible scope of the taking of their luggage. However, Campos and Carranza misread Place. The inquiry into whether the seizure of their suitcases required reasonable suspicion or probable cause does not depend on whether an arrest occurred because no questioning took place while Campos and Carranza were being held, nor did their detention directly or indirectly lead to the discovery of any evidence which they sought to have suppressed. Campos and Carranza's suitcases were subjected to a canine sniff test based on evidence obtained prior to the point at which Campos and Carranza claim that they were placed under arrest. See Nix v. Williams, 467 U.S. 431, 443 (1984) (independent source doctrine permits admission of evidence that has been discovered by means wholly independent of any constitutional violation).[1]
 
 
 9
 Under most circumstances, brief seizures of luggage by airport narcotics officials, for the purpose of conducting a canine sniff test, need only be based on reasonable suspicion. See, e.g., United States v. Ayarza, 874 F.2d 647 (9th Cir.1989), cert. denied, 493 U.S. 1047 (1990) (non-consensual search upheld when based on reasonable and articulable suspicion of criminal activity); United States v. Erwin, 803 F.2d 1505, 1509 (9th Cir.1986) (non-consensual seizure of defendant's day pack for the purpose of conducting a sniff test required only reasonable suspicion where test took 45 minutes, the defendant was invited to observe, and arrangements were made for possible return of the pack). This case is factually similar to Erwin and Ayarza. Here, the luggage was seized for less than 45 minutes. DEA agents diligently pursued the investigation. Carranza and Campos were aware of where their luggage was at all times and were told what kind of test was being performed. Mere reasonable suspicion, not probable cause, was required to effect the seizure of Campos and Carranza's luggage.
 
 
 10
 Detective Gillespie's knowledge that Carranza appeared nervous, that Campos and Carranza had each paid cash for a one-way ticket, that each carried new hard-sided luggage, that their stories about knowing each other conflicted, and that each consented to a search of her luggage but that improbably, neither could find her key, provided the reasonable and articulable suspicion of criminal activity to justify seizure of their luggage and the ensuing canine sniff. The positive result of the sniff test supplied probable cause to obtain a warrant for a full search of the luggage. Ayarza, 874 F.2d at 651. The district court therefore properly refused to suppress evidence of the narcotics found in the suitcases.
 
 C
 
 11
 Carranza and Campos argue that even if their arrests were legal, the luggage keys seized from their purses were inadmissible because the search of their purses was not within the legitimate scope of a search incident to arrest. The district court concluded that the search was a lawful search incident to arrest and a lawful inventory search.
 
 
 12
 "When making a lawful arrest, police may conduct a warrantless search of the area within the arrestee's immediate control, that is, 'the area from within which he might gain possession of a weapon or destructible evidence.' " United States v. Turner, 926 F.2d 883, 887 (9th Cir.1991) (quoting Chimel v. California, 395 U.S. 752, 763 (1969)), cert. denied, 112 S.Ct. 103 (1991). Containers found within that area may also be searched contemporaneously with the arrest. United States v. Burnette, 698 F.2d 1038, 1049 (9th Cir.), cert. denied, 461 U.S. 936 (1983).
 
 
 13
 Campos and Carranza concede that they had possession and control of their purses until the moment of arrest. Both purses were taken as DEA officers put Campos and Carranza under arrest, and read their Miranda rights. We agree with the district court, that the search of the purses fell within the scope of a search incident to arrest. See United States v. Andersson, 813 F.2d 1450, 1456 (9th Cir.1987) ("the agents could search both [the defendant] and the immediate area, including containers, as a search incident to arrest, as long as the search of the suitcase occurred at about the same time as the arrest").
 
 II
 
 14
 Campos argues that the district court improperly failed to give her a 2 point reduction in her offense level for being a minor participant. Campos claims that her limited role as a courier, or "mule," in a larger cocaine operation warrants a minor participant reduction. A district court's denial of minor participant status is a factually dependent determination which will be upheld unless clearly erroneous. United States v. Ocampo, 937 F.2d 485, 491 (9th Cir.1991).
 
 
 15
 Section 3B1.2(a) of the Sentencing Guidelines provides a four-level reduction in offense level if the defendant was a "minimal" participant in the criminal activity and a two-level reduction if the defendant was a "minor" participant. U.S.S.G. § 3B1.2(a). The defendant has the burden of showing minimal or minor participation. United States v. Torres-Rodriguez, 930 F.2d 1375, 1389 (9th Cir.1991). The commentary describes a minor participant as one "who is less culpable than most other participants but whose role could not be described as minimal." U.S.S.G. § 3B1.2(a), Application Note 3. The background note to § 3B1.2 states that minor and minimal participant adjustments are meant to apply to defendants who are "substantially less culpable than the average participant." Id., Background.
 
 
 16
 Campos was arrested carrying 9,016 grams of high quality cocaine in her suitcase. Her two co-conspirators were caught with similar amounts. There is no direct evidence that Campos was merely serving as a courier and based on the facts, the district court declined to make that inference. Even had her role as a mere courier been established, "courier status alone does not require a role reduction." United States v. Zweber, 913 F.2d 705, 710 (9th Cir.1990). The district court's determination that Campos was not a minor participant was not clearly erroneous.
 
 
 17
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Florida v. Royer, 460 U.S. 491 (1983) is inapplicable to the present facts because Campos and Carranza each consented to an interview with the DEA agent prior to the point at which they claim that they were illegally seized