UNITED STATES of America,
Plaintiff—Appellee,

v.

Vernon Lee ROBERTS, Defendant—
Appellant.

No. 00–10462.

D.C. No. CR–98–00412–SOM.

United States Court of Appeals,
Ninth Circuit.

Argued Oct. 31, 2001.

Submitted May 9, 2002.

Decided June 5, 2002.

856

Before THOMPSON, O'SCANNLAIN, and BERZON, Circuit Judges.

MEMORANDUM *

Defendant Vernon Lee Roberts appeals his conviction and sentence for possession with intent to distribute in excess of 100 grams of crystal methamphetamine. Because the facts are familiar to the parties, we recount them only as necessary to explain our decision.

1. Officer Dwayne Stickles did not violate Roberts' Fourth Amendment rights when he first approached Roberts and began to question him. A law enforcement official "may stop and question any individual for any reason as long as the person to whom questions are put remains free to disregard the questions and walk away; such an encounter is not a seizure." *United States v. Arias–Villanueva,* 998 F.2d 1491, 1501 (9th Cir.1993); *see also United States v. Mendenhall,* 446 U.S. 544, 555, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Morgan v. Woessner,* 997 F.2d 1244, 1252 (9th Cir.1993).

2. Officer Stickles also did not violate Roberts' Fourth Amendment rights when he detained Roberts' luggage for the purpose of conducting a dog-sniff search. It does not matter whether we accept Roberts' argument that he did not consent to the detention (as opposed to an on-the-spot search) of his luggage, as Officer Stickles had a reasonable, articulable suspicion justifying the brief detention of Roberts' luggage. Stickles formed his reasonable suspicion regarding Roberts' luggage based on observations made prior to his request for Roberts' consent to search Roberts and his luggage: Roberts matched the description contained in the tip relayed to him from the Los Angeles DEA office; when asked for his birth date, Roberts responded with two different dates, neither of which matched the date on his driver's license; Roberts exhibited concern about being watched and walked very slowly through the airport; Roberts was visibly shaking when Stickles spoke with him; and Roberts behavior matched several traits contained in a drug courier profile, including payment for his plane ticket in cash that same day and carrying what appeared to be a large amount of cash. While none of these factors individually may have aroused reasonable suspicion, taken as a whole they did. *United States v. Sokolow,* 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *United States v. Ayarza,* 874 F.2d 647, 652 (9th Cir.1989).

Once a law enforcement official has reasonable suspicion that a person may be transporting narcotics, the official may briefly detain the suspect's luggage in order to conduct a dog-sniff search. *United States v. Place,* 462 U.S. 696, 706, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *Ayarza,* 874 F.2d at 651. As a result, Officer Stickles did not violate Roberts' rights when he

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

detained Roberts' luggage and fanny pack for the purposes of conducting a dog-sniff search.

■ We reject Roberts' argument that because he had consented to an on-the-spot search of his luggage, Officer Stickles had a less intrusive means available to him of dispelling or confirming his suspicions. Roberts contends that instead of detaining Roberts' luggage for a dog-sniff search, Officer Stickles could have simply searched his luggage on the spot and conducted a *Terry* search of Roberts at the same time. This would have been less intrusive because Roberts had consented to the luggage search and because an on-the-spot pat-down search is less restrictive than a 20–minute detention. Officer Stickles, however, had a reasonable suspicion regarding the presence of drugs in not only Roberts' luggage, but also in his fanny pack. Roberts refused to consent to a search of his fanny pack, and Officer Stickles thus did not have the option of conducting an on-the-spot consensual search of the fanny pack. As a result, the brief detention of the fanny pack, along with Roberts' luggage, for the purposes of a dog-sniff search was the least intrusive means available for Officer Stickles to confirm or dispel his reasonable suspicions.

■ 3. Roberts argues that the law enforcement officers illegally detained him prior to formally placing him under arrest. Assuming without deciding that Officer Stickles did violate Roberts' rights when he placed Roberts in a detention room prior to conducting the dog-sniff search of Roberts' luggage, the district court did not err when it denied Roberts' motion to suppress. After the law enforcement officers detained Roberts, they conducted a valid dog-sniff test of his luggage, and, then, formally placed him under arrest. This formal arrest was supported by probable cause, and did not violate the Constitution,

as we explain below. The law enforcement officials seized the methamphetamine in a search incident to this formal arrest. Because the law enforcement officials had probable cause, established by a legal, independent source, to formally arrest Roberts, neither the formal arrest nor the search incident to this arrest were fruits of any illegal detention. *Segura v. United States*, 468 U.S. 796, 815, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).

The fact that Roberts would have had the opportunity to get rid of the methamphetamine if the police had not illegally detained him—and very well might have done so since at that point he knew the authorities suspected him of drug-smuggling—does not undermine our conclusion that the evidence obtained from the subsequent search was not the fruit of the illegal detention. The Supreme Court rejected this very argument in *Segura*. *Id.* at 816, 104 S.Ct. 3380 (the concept that "there is some 'constitutional right' to destroy evidence ... defies both logic and common sense").

■ 4. Once the drug-sniffing dog, Rex, indicated that Roberts' luggage contained narcotics, Officer Stickles had probable cause to arrest Roberts. Probable cause to arrest someone without a warrant exists "if, at the time the arrest is made the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Bailey v. Newland*, 263 F.3d 1022, 1031 (9th Cir. 2001) (internal quotations omitted); *see also United States v. Garcia*, 205 F.3d 1182, 1187 (9th Cir.2000) (probable cause to search an area exists when a drug-sniffing dog alerts to that area).

Roberts argues that probable cause for his arrest did not exist because Rex was not a reliable drug-sniffing dog. The record, which indicates that at the time of the arrest Rex had a high rate of successfully identifying the presence of narcotics, does not support this contention.

■ 5. Roberts also argues that the district court sentenced him in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because, under 21 U.S.C. § 841(b)(1)(C), the prosecutor was not required to prove as an element of Roberts' offense the type or quantity of the drugs Roberts was charged with possessing. Even if an *Apprendi* error did occur, the error was not plain error in that it did not affect Roberts' substantial rights. Roberts admitted at his change of plea hearing that he possessed three pounds of methamphetamine. At no point has Roberts contested the accuracy of this information. Given Roberts' admission and the absence of any challenge to the finding that he possessed three pounds of methamphetamine, any *Apprendi* error in this case did not affect the outcome of the proceedings and, accordingly, did not affect Roberts' substantial rights. *United States v. Buckland*, 289 F.3d 558, 569 (9th Cir.2002).

The judgment of the district court is AFFIRMED.