UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronald Lee BRAMBLE,
Defendant-Appellant.

No. 81–1632.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1982.

Decided June 28, 1982.

A. J. Kramer, Asst. Federal Public Defender, San Francisco, Cal., for defendant-appellant.

Joseph M. Burton, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before DUNIWAY, CHOY and HUG, Circuit Judges.

---

DUNIWAY, Circuit Judge:

Bramble appeals from his conviction on three counts under 21 U.S.C. § 841(a)(1): two counts of distributing cocaine, and one count of possessing cocaine with intent to distribute it. An earlier conviction was reversed. *United States v. Bramble*, 9 Cir., 1981, 641 F.2d 681. We now affirm.

## I. *Facts.*

Bramble arranged, by telephone, to sell two pounds of cocaine to an undercover agent of the Drug Enforcement Administration for $64,000. His contact with the agent was arranged by one Spalding, with whom he had been fishing in Alaska. The agent and Spalding were in Seattle. Bramble lived in Woodside, California. He offered to charge $2,000 less if the agent would take delivery in California. The telephone calls in which the transaction was arranged were monitored and recorded, and were played to the jury. The agent, accompanied by Spalding, flew to San Francisco. After some telephone calls, Bramble met them at a Redwood City motel, and a pound of cocaine was sold by Bramble to the agent for $32,000. He was then arrested, and a second pound of cocaine was found in his vehicle, along with a loaded pistol. Bramble also had with him a balance scale, a bank money bag, and a notebook that could be read as a record of drug transactions, although Bramble said it was a record of quantities of rock or sand hauled in his truck.

Bramble admitted the sale. His defense was entrapment. He said that he had never before sold cocaine, and that he did so on this occasion only to stop repeated harassing phone calls made to him by Spalding. The government did not call the informer, Spalding, to testify. Neither did Bramble. Obviously, the jury did not believe Bramble's story.

## II. *The Issues on Appeal.*

Bramble makes three arguments on appeal: (a) that it was error to refuse to give a requested "missing witness" instruction, (b) that it was error to refuse to allow Bramble's counsel to mention in closing argument the absence of Spalding, (c) that it was error to place certain other restrictions upon defense counsel's closing argument.

### (a) *The Missing Witness Instruction.*

■ At a pre-trial conference on a Thursday, Bramble's counsel said that if Spalding were called she "would have to subpoena at least three witnesses two of whom are in Alaska, one is in Hawaii, who would have testimony bearing on Mr. Spalding's behavior, and credibility, and actions in dealing with the defendant in this case." At a further conference on the following Monday morning, after the selection of the jury, Bramble's counsel said: "The government has suggested that they might want to call Mr. Spalding to the stand so that the defense couldn't be able to argue in closing argument that the government failed to call somebody who is important. . . . I think the government should be precluded from calling Mr. Spalding unless I get a continuance of sufficient time so I can bring down the witnesses that bear upon his testimony." The prosecutor replied that the government did not want a continuance and that it would not call Mr. Spalding, and continued: "But would also indicate . . . that it intends to rebut whatever argument is made by Ms. Arguedas [Bramble's counsel] as to the failure of the government to call Mr. Spalding with an argument saying that Mr. Spalding is available, to be called by the defense should the defense wish to call him. And, in fact, I will stipulate for the record that Mr. Spalding is available today for a defense subpoena if the defense did indeed call him." Bramble's counsel then said: "And the defense may object to such an argument in rebuttal," and the judge said: "All right." Bramble's counsel interviewed Spalding that afternoon, and said that she did not wish him to stay around.

The missing witness instruction that was refused was taken from *Devitt & Blackmar, Federal Jury Practice and Instructions,* § 17.19 (1977), and reads:

> If it is peculiarly within the power of either the prosecution or the defense to produce a witness who could give materi-

**592**

al testimony on an issue in the case, failure to call that witness may give rise to an inference that his testimony would be unfavorable to that party. However, no such conclusion should be drawn by you with regard to a witness who is equally available to both parties, or where the witness's testimony would be merely cumulative.

The jury will always bear in mind that the law never imposes on a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

■ The refusal to give the suggested instruction was not error. Such a decision is within the discretion of the trial judge. *United States v. Bautista*, 9 Cir., 1975, 509 F.2d 675, 678. There was no abuse of discretion here. Indeed, it would have been error to have given the instruction. "A 'missing witness' instruction is proper only if 'from all the circumstances an inference of unfavorable testimony from an absent witness is a natural and reasonable one.' *Burgess v. United States*, 142 U.S.App.D.C., 198, 440 F.2d 226, 234 (1970)." *United States v. Long*, 9 Cir., 1976, 533 F.2d 505, 509. In the circumstances of this case that inference would neither be natural nor reasonable. Here, defense counsel had interviewed Spalding, and had "indicated that she did not wish to have him stay around . . . because I didn't want him on the stand, because I anticipated making an argument about his absence." To have given the instruction under these circumstances would have been to mislead the jury. No case that has been cited to us would require the instruction under these circumstances.

### (b) *The Missing Witness Argument.*

We find no error in the refusal of the court to permit Bramble's counsel to argue to the jury that it could draw an unfavorable inference against the government from the fact that Spalding did not testify. In defense counsel's interview of Spalding she must have learned either (1) that his testimony would be unfavorable to Bramble, or (2) that it would be favorable to him, or (3)

that it would be of little help to either side. If it would have been unfavorable to Bramble, her argument based on his absence would have been fraudulent. If it would have been favorable to Bramble, she could have called him, and if she did not, his absence should be attributable to her, not to the government. Again, her proposed argument would have been misleading. It would give the defense some of the benefit to be obtained from his testimony, without the risk of cross examination. If the testimony would have been of little benefit to either side, it would be misleading to argue that Spalding's absence supports an inference favorable to Bramble's side. We deal here with gamesmanship, and we decline to support it. To support it here would be particularly unfortunate, because the defense has no duty to produce or call any witness. Thus the argument is helpful to the defense, but of little, if any, help to the government, regardless of what the testimony would have been. *See Graves v. United States*, 1893, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021.

We express no opinion on the question of whether comment upon a missing witness should be allowed in the absence of any earlier request for an instruction on the point.

### (c) *Other Restrictions on Defense Counsel's Closing Argument.*

■ Bramble argues that it was error to preclude his counsel from arguing to the jury that the government had failed to produce any evidence of prior drug dealings or evidence that Bramble "has cocaine in his house, . . . drives a fancy car, that he lives the life of a drug dealer." The judge told the jury to consider the evidence and not to speculate and said to Bramble's counsel in the presence of the jury: "And you're an officer of this court, and quit it. Now get on with your argument Ms. Arguedas." Some minutes later the judge excused the jury and then set strict limits on Bramble's closing argument. Bramble's counsel was allowed a few minutes to reshape her closing address. We might wish that the judge

had been less severe with counsel in the presence of the jury, but it was not reversible error to restrict counsel's argument. Counsel are allowed wide latitude in closing argument, but we need not decide whether the limits on closing argument that were laid down by the judge here were too strict. If they were, the error was harmless. The transaction in question was admitted, and was that of a large scale seller, not the kind of thing one would expect an innocent man to do as a favor for a friend, or to get the friend "off his back." Moreover, according to Bramble's testimony, he was merely pestered by Spalding, and at a distance of nearly a thousand miles. The recorded telephone conversations in which the transaction was agreed to, and much of Bramble's own testimony, point to a completely voluntary transaction on his part, not to entrapment. We cannot believe that the proposed argument would have helped Bramble.

Affirmed.