**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Danny Virgil MALONE,**
**Defendant–Appellant.**

**No. 88–3258.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 1989.

Decided Sept. 28, 1989.

Terrence Kellogg, Seattle, Wash., for defendant-appellant.

Susan B. Dohrmann and T. Anthony Platter, Asst. U.S. Attys., Seattle, Wash., for plaintiff-appellee.

Before ALDISERT,\* WRIGHT and BEEZER, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

We consider whether federal agents had reasonable suspicion of drug courier activity when they briefly detained Danny Malone and his bag at the airport. We affirm the district court's well reasoned decision to deny his motion to suppress and we uphold the constitutionality of the sentence.

\* Senior Judge Ruggero J. Aldisert, United States

## BACKGROUND

Two Drug Enforcement Administration (DEA) agents assigned to the Seattle–Tacoma Airport observed Malone arriving from Los Angeles on a Continental Airlines flight. He first attracted their attention because he fit the "L.A. gang-member" profile. They observed that he was a young, black male, wore a blue jacket of the favorite color of one Los Angeles gang, traveled from Los Angeles on an airline favored by gang members transporting drugs, carried only a plastic shoe bag, and was nervous.

Based on these gang profile observations, the agents suspected Malone of transporting drugs. As he walked past them, he gave one agent a "very hard look" and proceeded quickly through the concourse. They followed Malone and observed him glance repeatedly around the terminal quickly and furtively. He turned completely around on the escalator to look at persons behind him. After stopping at a bathroom, he walked past the baggage claim area without claiming luggage. He obtained change from a machine and made a telephone call.

As he left the terminal, the agents approached, identified themselves as law enforcement officers, and asked to question him. He agreed. They asked for identification. He said his name was David Malone and that he had no identification. At the agents' request, he showed them his plane ticket. A third party had purchased it by credit card for a David Malone. Although the ticket revealed a three day stay in Seattle, his only baggage was the shoe bag. He claimed to be visiting his aunt in Seattle, but could not give the agents her address.

Based on these additional observations, the agents decided to investigate further. They identified themselves as narcotics officers looking for drugs entering Seattle. Advising him that he could refuse, the agents asked to search him and his shoe bag. He refused. However, he volunteered to accompany them to the Port of

Court of Appeals for the Third Circuit.

Seattle Police Office to verify his identity. In this initial conversation, the agents told him that he was not under arrest, that he was free to leave, and that he could refuse their search requests. As their discussion continued, they repeated these statements three times.

On the way to the office, the agents asked Malone for telephone numbers of anyone who could verify his identity. He could provide none. The agents then advised him that he could leave, but they would retain his shoe bag to have a narcotics dog make a sniff test. If the dog did not alert, they would return the bag to him. If the dog alerted, the agents would seek a search warrant.

In the office, one agent said that he wished to read Malone his *Miranda* rights. Malone asked if he was under arrest and the agent told him that he was free to leave, but that he would like to read him his rights. He then read the rights and Malone responded that he understood.

A police dog on a leash walked by the office, about ten feet away. Seeing the dog, Malone consented to a search of his person. The agents conducted a pat-down search and found crack cocaine in his jacket pocket. They arrested him, opened his shoe bag and found a larger quantity of cocaine. He confessed to transporting the cocaine base to sell in Seattle.

After the court denied his motion to suppress evidence, Malone pleaded guilty conditionally to violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). The court sentenced him to the mandatory minimum term of ten years.

## ANALYSIS

I. *Motion to Suppress Evidence*

Malone challenges the court's denial of his motion to suppress evidence obtained at the airport.

A. *Did the DEA Agents Possess Reasonable, Articulable Suspicion to Detain Malone and His Bag?*

Malone concedes that his initial encounter with the agents did not rise to the level of a seizure under the Fourth Amendment. A law enforcement officer may stop and question any person, for any reason, as long as that person "remains free to disregard the questions and walk away." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (Stewart, J.); *United States v. Ayarza*, 874 F.2d 647, 650 (9th Cir.1989). The initial questioning of Malone did not implicate his Fourth Amendment rights. *See, e.g., Ayarza*, 874 F.2d at 650; *United States v. $25,000 U.S. Currency*, 853 F.2d 1501, 1505 (9th Cir.1988).

By the time the agents escorted Malone to the office and told him that they would detain his shoe bag, the circumstances had escalated into a situation where reasonable suspicion was required. *See Ayarza*, 874 F.2d at 650–51. Malone contends that the agents unlawfully detained him and his shoe bag without reasonable and articulable suspicion of drug courier activity.

■ With reasonable suspicion, the government may briefly detain a suspect and personal baggage for investigative purposes. *United States v. Sokolow*, —— U.S. ——, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); *United States v. Place*, 462 U.S. 696, 697–98, 103 S.Ct. 2637, 2639–40, 77 L.Ed.2d 110 (1983). This suspicion must be supported by articulable facts that criminal activity may be occurring. *Sokolow*, 109 S.Ct. at 1585; *Ayarza*, 874 F.2d at 650–51.

■ In evaluating the validity of the detention here, we consider "the totality of the circumstances." *Sokolow*, 109 S.Ct. at 1585. The court found these facts as bases for the agents' suspicion: (1) Malone was a young, black male and wore a blue jacket, the favorite color of one Los Angeles gang; (2) he arrived from a city known to supply cocaine to Seattle; (3) he traveled on an airline favored by gang members transporting drugs; (4) he continually glanced around the terminal quickly and furtively; (5) he carried only a plastic shoe bag for a three-day stay; (6) he gave one agent a "hard look" and turned completely around on the escalator to look at persons behind him; (7) he passed through baggage claim

without claiming luggage; (8) he had no identification and could not name anyone in Seattle to verify his identity; and (9) he could not explain his presence in the city.

Even if each of the factors viewed alone is consistent with innocent activity, viewed together they may support a finding of reasonable suspicion. *Ayarza*, 874 F.2d at 652. Wholly lawful conduct may justify a reasonable suspicion of criminal activity. *Sokolow*, 109 S.Ct. at 1586–87 (citing *Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980)). We are satisfied that the facts, taken collectively, established the requisite degree of suspicion to detain Malone and his shoe bag.

In its recent decision in *Sokolow*, the Court held that DEA agents had a reasonable basis to suspect that the defendant was transporting illegal drugs. 109 S.Ct. at 1587. It found reasonable suspicion when the defendant (1) bought his ticket with bills from a large cash roll; (2) traveled under a name that did not match his telephone listing; (3) arrived from a drug source city; (4) acted nervously; and (5) checked no baggage. *Id.* at 1583, 1587.

Although Malone did not buy his ticket with a roll of cash or travel under an assumed name, he could not prove his identity. He failed to provide the agents with the telephone number or address of his aunt in Seattle, and could not give them the name of anyone who could verify his identity.

As in *Sokolow*, he arrived from a drug source city and checked no baggage for a three day trip. 109 S.Ct. at 1587; *see, e.g., United States v. Erwin*, 803 F.2d 1505, 1510 (9th Cir.1986). The agents observed him take furtive, quick glances around the area as he deplaned and walked through the terminal. He continued to look over his shoulder and at the persons behind him during the time that the agents observed him. *See Erwin*, 803 F.2d at 1510.

Further, Malone could not give any valid reasons for his trip to Seattle. We find his inability to explain his travel plans particularly persuasive. *See Ayarza*, 874 F.2d at 652. Even though each of these factors standing alone may not reflect any illegal activity, viewed in their totality, the circumstances here support a finding of reasonable suspicion. *See, e.g., Sokolow*, 109 S.Ct. at 1583, 1587; *Ayarza*, 874 F.2d at 651–52.

Malone contends further that the agents stopped him because he was a young black male who fit the "L.A. gang-member" profile. He claims, and the government concedes, that not all gang members fit the "drug-courier" profile. Malone deduces that the agents detained him without reasonable suspicion of drug activity.

Police must articulate factors supporting a finding of reasonable suspicion. *Sokolow*, 109 S.Ct. at 1585. The fact that those factors fit a profile does not lessen their evidentiary significance under a totality of the circumstances analysis. *Id.* at 1587; *Ayarza*, 874 F.2d at 651. The district court found that the DEA created the "gang-member" profile because Los Angeles street gang members had been transporting drugs into Seattle. Both profiles serve to help police officers recognize potential drug couriers. Some factors in the drug courier profile appear also in the gang member profile.

Here, in addition to the profile characteristics, the agents knew that Malone carried only a shoe bag for a three day trip, had no identification, could not name anyone in Seattle to verify his identity, and could not explain his presence in the city. Based on the totality of the circumstances, the court held correctly that the agents had a reasonable, articulable basis to suspect Malone of transporting illegal drugs.

**B.** *Was the Search of Malone and His Bag Valid?*

First, Malone argues that, because he agreed to accompany the agents to the office during an invalid detention, his consent was not voluntary. In light of our holding that the agents properly detained him based on reasonable suspicion, this argument lacks merit.

Second, he asserts that due to his fear of dogs, the presence of the dog nearby tainted his consent to the search of his person.

The court considered all factors set forth in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and concluded correctly that the consent was voluntary.

Third, Malone contends that the agents exceeded the permissible bounds of the limited intrusion allowed based on reasonable suspicion, by not using the least intrusive investigative means. *See Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229 (1983) (White, J.). He asserts that the agents should have brought the dog to the location where they initially questioned him. The Court in *Sokolow* considered and rejected Malone's argument by limiting *Royer*'s "least intrusive means" language solely to the length of the investigative stop. 109 S.Ct. at 1587. We find no merit in any of Malone's contentions.

II. *Constitutionality of § 841(b)(1)(A)(iii) as Applied*

■ Malone asserts that the statute's mandatory term is unconstitutional as applied to him because it is irrational to impose a ten year sentence on a first time offender whose participation in the conspiracy was minor. This argument has no merit. The government did not charge conspiracy. It charged only the possession and intent to distribute cocaine. He has no standing to challenge the statute's effect on minor members of a conspiracy. *See United States v. Zavala–Serra,* 853 F.2d 1512, 1517 (9th Cir.1988) (defendant may challenge the constitutionality of the statute only as it applies to him).

He contends further that the statute is unconstitutional because it treats irrationally 50 grams of cocaine base as equivalent to five kilograms of cocaine. Congress chose a "market-oriented approach" to sentencing in this statute. We have upheld the constitutionality of this approach. *See United States v. Hoyt,* 879 F.2d 505 (9th Cir.1989); *see also United States v. Savinovich,* 845 F.2d 834, 839 (9th Cir.) (holding

approach constitutional under § 841(b)(1)(B)), *cert. denied,* —— U.S. ——, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). The sentence was proper.

AFFIRMED.