**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard VAN WINROW, Defendant–
Appellant.**

**No. 89–50664.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1991.

Decided Dec. 16, 1991.

Donald J. Green, Las Vegas, Nev., David Z. Chesnoff, Goodman, Stein & Chesnoff, Las Vegas, Nev., for defendant-appellant.

Lisa B. Lench, Sp. Asst., U.S. Atty., Major Narcotics Section, Los Angeles, Cal., for plaintiff-appellee.

Carolyn Chapman, National Ass'n of Criminal Defense Lawyers, San Diego, Cal., for the amicus.

Before BROWNING, ALARCON and T.G. NELSON, Circuit Judges.

PER CURIAM:

Richard Van Winrow was convicted for possession of cocaine with the intent to distribute, a violation of 21 U.S.C. § 841(a) (1988), and for being an ex-felon in possession of a firearm, a violation of 18 U.S.C. § 922(g) (1988). Winrow was sentenced to a mandatory term of life in prison without possibility of parole under a provision of 21 U.S.C. § 841(b)(1)(A) enacted a few weeks before his arrest. *See* Anti–Drug Abuse Act of 1988, Pub.L. 100–690, § 6452, 102 Stat. 4181, 4371 (1988). Winrow challenges the legality of his sentence on numerous grounds. We affirm.[1]

Section 841(b)(1)(A) provides for a mandatory sentence of life in prison without possibility of parole for any person with two or more prior felony drug convictions who is convicted of possessing with the intent to distribute 50 grams or more of a substance containing cocaine base. Winrow was convicted for possessing with the intent to distribute 151.9 grams of 94 percent pure cocaine base. He had three prior California felony convictions for cocaine possession.

---

1. Winrow also appeals his conviction. We affirm in a separate memorandum disposition.

### A

■ Winrow argues his sentence violates the Eighth Amendment's ban on cruel and unusual punishments because it is disproportionate to his crime. In *Harmelin v. Michigan*, — U.S. —, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), the Supreme Court held a mandatory sentence of life without parole was not unconstitutionally disproportionate to a first-time offense of drug possession. *Id.* 111 S.Ct. at 2709.[2] Harmelin was convicted for possessing 672.5 grams of cocaine and had no prior convictions. In contrast, Winrow was convicted for possessing with the intent to distribute 151.9 grams of cocaine and received the mandatory sentence on the basis of his three prior felony drug convictions.

While Winrow possessed less cocaine than Harmelin, we do not regard the difference as significant. Winrow's cocaine was in the cocaine base form known as "rock" or "crack" cocaine. For the purposes of sentencing, section 841(b)(1)(A) treats as equivalent 5 kilograms of a substance containing cocaine and 50 grams of a substance containing cocaine base. Congress has thus determined possession of a substance containing cocaine base is as serious as possessing 100 times as much cocaine in any other form. We have upheld this 100:1 ratio as a rational distinction. *United States v. Malone*, 886 F.2d 1162, 1166 (9th Cir.1989). *See also United States v. Pickett*, 941 F.2d 411, 418–19 (6th Cir.1991) (discussing reasons justifying the 100:1 ratio). At Winrow's trial, an expert witness testified Winrow possessed enough cocaine for several hundred doses.

Winrow was convicted of an offense as serious as the offense in *Harmelin*. We are therefore bound by *Harmelin* to hold a mandatory sentence of life without parole was not unconstitutionally disproportionate to Winrow's offense.

### B

■ Winrow suggests a mandatory sentence of life without possibility of parole violates the Eighth Amendment because the trial judge is precluded from considering mitigating circumstances. In *Harmelin*, the Supreme Court rejected this argument, holding the Eighth Amendment does not require individualized sentencing for sentences other than death. 111 S.Ct. at 2701–02.

### C

■ Winrow argues a mandatory sentence of life without possibility of parole violates due process because the trial judge is deprived of discretion to impose a different sentence. We have previously upheld mandatory minimum sentences provided by section 841(b)(1) against such challenges. *See, e.g., United States v. Brownlie*, 915 F.2d 527, 528 (9th Cir.1990). Winrow distinguishes these cases because the trial judge was left with discretion to impose a sentence greater than the minimum. However, we have also held a statute requiring the trial judge to impose a specific sentence does not violate due process. *United States v. Wilkins*, 911 F.2d 337, 338–340 (9th Cir.1990) (upholding statute imposing mandatory sentence of exactly five years). The difference between Winrow's sentence and the sentence imposed in *Wilkins* is in length, not whether discretion is left to the trial judge.

As we noted in *Brownlie*, sentences under section 841(b) are "individualized according to the quantity and variety of narcotic possessed." 915 F.2d at 528 (citation omitted). Sentences are further individualized according to number of prior felony drug convictions. We conclude the mandatory sentence imposed on Winrow is consistent with due process.

---

**2.** While the Supreme Court failed to produce a majority in *Harmelin* on the proper test for disproportionality, five Justices joined in a judgment rejecting the contention a sentence of life without parole was unconstitutionally disproportionate to Harmelin's crime. "When a fragmented Court decides a case and no single ratio-nale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds...." *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) (citation omitted).

## D

■ Winrow argues he should not have received a sentence of life without possibility of parole because Congress intended such a sentence to apply only to "drug kingpins." Winrow, who was 22 years old at the time of sentencing and apparently a gang member, also argues his sentence is contrary to Congressional intent to rehabilitate young people and gang members. By its plain language, section 841(b)(1)(A) requires a life sentence without parole for any person with two or more prior felony drug convictions who is convicted of possessing with the intent to distribute more than 50 grams of a substance containing cocaine base. No exceptions were made for persons who are not "drug kingpins," for persons 22 years old or under, or for gang members. The plain language of a statute is the best indicator of legislative intent. While courts do look to legislative history, only "the most extraordinary showing of contrary intentions ... would justify a limitation on the 'plain meaning' of the statutory language." *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984). There is no such extraordinary evidence of contrary intent in the legislative history of the sentencing provision. The mandatory sentence of life without parole in the statute was properly applied to Winrow.

## E

■ Winrow argues a mandatory sentence of life without parole is in conflict with 18 U.S.C. § 3661, which provides:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C. § 3661 (1988). Section 3661, entitled "Use of Information for Sentencing," was enacted in 1970. *See* Pub.L. No. 91–452, § 1001; 84 Stat. 922, 951 (1970). The mandatory sentence of life without parole was added in 1988. *See* Pub.L. No. 100–690, § 6452; 102 Stat. 4181, 4371 (1988).

Although section 3661 suggests judges have discretion in imposing sentences, Congress may amend, repeal or make exceptions to its own statutes. The intent of the mandatory sentencing provision, entitled "Life in Prison for Three–Time Drug Offender" is unambiguous. We conclude Congress intended to impose a mandatory life without parole sentence, even though this would deprive judges of discretion in sentencing.

## F

■ The National Association of Criminal Defense Lawyers, as amicus curiae, raises several additional challenges to Winrow's sentence. Because Winrow states in his brief that he wishes to adopt these arguments as his own, and because they present pure issues of law, we will consider them here.

Amicus argues Winrow's sentence is illegal because the procedural safeguards of a bill introduced before Congress were not followed. The bill never became law, and the sections of the bill cited by amicus would not have applied to sentences other than death.

■ Amicus argues section 841(b)(1)(A) is unconstitutionally vague in its definition of "felony drug offenses" that lead to an enhanced sentence. "[W]hen a vagueness challenge is not based on First Amendment freedoms, the challenge must be examined in light of the facts of the case at hand." *United States v. Van Hawkins*, 899 F.2d 852, 854 (9th Cir.1990). Section 841(b)(1)(A) defines "felony drug offense" as any offense that is "a felony under any law of a State ... that prohibits or restricts conduct relating to narcotic drugs...." 21 U.S.C. § 841(b)(1)(A). Winrow had three prior California felony convictions for possession of cocaine. As applied to Winrow, the statute is not vague.

■ Amicus argues Winrow's sentence violates the Sixth Amendment's right to counsel because, by requiring imposition of a single sentence, section 841(b)(1)(A) has made the presence of defense counsel at the sentencing hearing irrelevant. Since a

defendant has the right to counsel at a sentencing hearing, amicus argues there must be something for counsel to do. However, the defendant has legal rights to protect at a sentencing hearing. *See, e.g., Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). Assuming, arguendo, there were never rights to protect at a particular proceeding, it might follow that there was no right to counsel at such a proceeding, not that the right to counsel has been violated.

■ Finally, amicus argues section 841(b)(1)(A) violates the equal protection component of the Fifth Amendment because prosecutors allow some defendants but not others to avoid a mandatory life without parole sentence in exchange for their cooperation. Prosecutors may allow some defendants to cooperate in exchange for a lesser sentence because their cooperation is necessary to convict other criminals. This would be a rational basis for a distinction.

AFFIRMED.