978 F.2d 716
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Fred Moe HAGLER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steven Lamar GREEN, Defendant-Appellant.
 Nos. 90-50223, 90-50230.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 10, 1992.
Decided Oct. 27, 1992.
 
 1
 Before SNEED and D.W. NELSON, Circuit Judges, and ROLL**, District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Fred Moe Hagler and Steven Lamar Green challenge the sufficiency of the evidence to support their criminal convictions on cocaine trafficking charges. Additionally, Hagler challenges the constitutionality of his sentence under the Eighth and Fifth Amendments, and Green argues that the district court erred in refusing to give his requested jury instruction regarding the government's failure to call a material witness (the so-called missing witness instruction). We affirm.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 A. The July Transaction
 
 4
 On July 6, 1989, Drug Enforcement Administration Special Agent Dempsey Jones, along with Pasadena Police Officer Marcia Jackson and a confidential informant, all acting undercover, met with Hagler at an apartment in the Wilmington Arms apartment complex in Compton, California. Jones told Hagler he wanted to purchase two and one half ounces of crack cocaine. Hagler said he would check with a personal friend and left the room. A few minutes later, Hagler returned and said the cocaine would cost $1,350, and that soon someone would come to the apartment with the cocaine.
 
 
 5
 Approximately ten minutes later, codefendant Anthony Brown (not a party to these appeals) entered the room. According to Agent Jones, Brown handed the crack cocaine to Hagler, who placed it on a table; Hagler now denies having handled the drugs. Jones gave Hagler $1,350 in cash. Hagler handed the money to Brown, and remarked that Brown would give him his "cut." Hagler then left the apartment with Brown.
 
 B. The August Transaction
 
 6
 In late August 1989, Agent Jones negotiated a second purchase of crack cocaine from Hagler, this time in the amount of three ounces. The two agreed to meet to complete the transaction at a restaurant on the corner of Vermont and El Segundo in Los Angeles. In telephone conversations held August 31, 1989, the day of the scheduled meeting, Hagler told Jones that Brown, who was supposed to have the cocaine, did not want to complete the transaction, and that Hagler was coming to the agreed meeting place to complete the transaction with another individual who had three ounces of cocaine. Jones also spoke with Hagler about having Hagler, Brown, and Myron Carter, an informant, drive some stereo equipment to Fresno, for which Jones would pay them $500 or $600 each.
 
 
 7
 Shortly afterwards, Hagler and Steven Lamar Green appeared at the meeting place and were arrested. An agent searched Green and found crack cocaine in his pocket. Green acknowledged that he knew it was crack cocaine. Notwithstanding this admission, Green now denies any knowledge of the drug transaction. At trial, Green testified as follows: He was visiting friends in the Wilmington Arms when informant Carter approached him and offered him a job moving a truckload of stereo equipment to Fresno. They went to Carter's car, where Hagler was waiting in the front passenger seat. They drove to the corner of El Segundo and Vermont. Once the car was parked, Carter handed him a bag and told him to hold it until he returned. After Carter got out of the car, he opened the bag and saw that it contained cocaine. Then he saw a man approach the car, and not knowing what to do, he put the bag in his pocket.
 
 C. Conviction and Sentencing
 
 8
 Hagler and Green were tried before a jury. Hagler was convicted of one count of distributing more than fifty grams of a substance containing cocaine base on July 6, 1989, and one count of possession with intent to distribute more than fifty grams of a substance containing cocaine base. 21 U.S.C. § 841(a)(1). Both these counts arose from the July transaction; a mistrial was declared with respect to two additional counts relating to the August transaction. Hagler was sentenced to 240 months imprisonment, and ten years supervised release on each count, to run concurrently. This sentence reflected an upward adjustment based on Hagler's 1983 conviction in state court for possession of cocaine.
 
 
 9
 Green was convicted of one count of attempting to distribute more than fifty grams of a substance containing cocaine base, id. §§ 846, 841(a)(1), and one count of possessing with intent to distribute more than fifty grams of a substance containing cocaine base, id. § 841(a)(1). Both of these counts arose from the August transaction. Green was sentenced to 120 months imprisonment, and five years supervised release on each count, to run concurrently.
 
 II.
 JURISDICTION AND STANDARDS OF REVIEW
 
 10
 We have jurisdiction under 28 U.S.C. § 1291. Several standards of review are applicable. In considering a challenge to the sufficiency of the evidence to support a conviction, "we will uphold a conviction if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of each element of the crime charged." United States v. Sanchez-Mata, 925 F.2d 1166, 1166 (9th Cir.1991). Circumstantial evidence consisting of several relatively insignificant pieces of evidence may be sufficient to support a jury's finding of guilt. United States v. Dupuy, 760 F.2d 1492, 1500 (9th Cir.1985). We review the constitutionality of a statute de novo. United States v. Brownlie, 915 F.2d 527, 527 (9th Cir.1990). The determination whether to give the missing witness instruction rests within the sound discretion of the trial court. Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 212 (9th Cir.1988).
 
 III.
 DISCUSSION
 A. Sufficiency of the Evidence
 
 11
 Hagler and Green both contend that the evidence was insufficient to support their respective convictions. We disagree.
 
 
 12
 1. Possession with intent to distribute cocaine base
 
 
 13
 Both Hagler and Green were convicted of possession with intent to distribute cocaine base. To sustain a conviction of possession with intent to distribute, the evidence must show that the defendant had dominion and control over the substance, that he knew the substance was a prohibited drug, and that he intended to distribute the drug. See United States v. Savinovich, 845 F.2d 834, 837-38 (9th Cir.), cert. denied, 488 U.S. 943 (1988). Possession may be either actual or constructive, and constructive possession can be demonstrated by the ability to produce the drug. United States v. Disla, 805 F.2d 1340, 1350 (9th Cir.1986).
 
 
 14
 a. Hagler's conviction
 
 
 15
 A rational jury could have concluded beyond a reasonable doubt that Hagler was guilty of possession of cocaine base with intent to distribute. Even if the jury believed Hagler's testimony that he had not actually held the crack cocaine, his ability to produce it and his control over the transaction indicate that he had dominion and control over the drug, that he knew it was crack cocaine, and that he intended to distribute it.
 
 
 16
 b. Green's conviction
 
 
 17
 A rational jury likewise could have concluded beyond a reasonable doubt that Green was guilty of possession with intent to distribute. There is direct evidence that Green actually possessed crack cocaine, and that he knew what the substance was. The jury was free to conclude that Green's explanation of why the drugs were in his pocket was not credible. The jury also could determine from the circumstantial evidence of Hagler's conversations with Jones that Green was the individual who was bringing the drugs in order to complete the sale.
 
 2. Distribution of cocaine base
 
 18
 Hagler was also convicted of distribution of cocaine base. To sustain a conviction of distribution, the evidence must show that the defendant intentionally delivered cocaine base to another and knew that it was cocaine base or some other prohibited drug. Here, if the jury believed the testimony of Special Agent Jones and Officer Jackson, it rationally could have concluded beyond a reasonable doubt that Hagler was guilty of distribution. The testimony of Jones and Jackson showed that Hagler arranged for the purchase and established the price of the crack cocaine; that codefendant Brown handed the package containing crack cocaine to Hagler, who then placed it on the table; and that Jones gave the cash to Hagler, who handed it to Brown while saying that he would receive his share of the proceeds.
 
 3. Attempt to distribute cocaine base
 
 19
 Green was convicted of attempting to distribute cocaine base. This conviction also is supported by the evidence. Hagler had arranged to sell three ounces of crack cocaine at an agreed meeting place. Green arrived with Hagler at that place with approximately three ounces of crack cocaine. A rational jury could have determined that Green was attempting to sell the cocaine.
 
 B. Constitutionality of Hagler's Sentence
 
 20
 Hagler argues that his sentence was imposed in violation of the Eighth Amendment's guarantee against cruel and unusual punishment, and also in violation of Fifth Amendment equal protection and due process guarantees. These arguments lack merit.
 
 1. Cruel and unusual punishment
 
 21
 Relying on the Supreme Court's decision in Solem v. Helm, 463 U.S. 277 (1983), Hagler argues that his sentence violates the Eighth Amendment's cruel and unusual punishment provision because it is disproportionate to his crime. He also asserts that the sentence should reflect his motive and the particular circumstances of his crime.
 
 
 22
 Hagler's argument is foreclosed by the reasoning of the five Justices constituting the majority in Harmelin v. Michigan, 111 S.Ct. 2680 (1991), which was decided the day after Hagler's opening brief was filed. As we recognized in United States v. Martinez, --- F.2d ----, 1992 WL 137694 at * 4 (9th Cir. June 23, 1992) and in United States v. Van Winrow, 951 F.2d 1069, 1071 (9th Cir.1991), Harmelin substantially limits the applicability of the Solem proportionality analysis. Although Hagler's sentence is less severe than that imposed on Harmelin, his crime is of greater gravity. Hagler was convicted of distributing 65.9 grams of a substance containing cocaine base. 21 U.S.C. § 841(b)(1)(A) treats fifty grams of cocaine base as equivalent to five kilograms (5000 grams) of cocaine. Id. § 841(b)(1)(A)(ii)-(iii). We previously have held that this 100 to 1 ratio is constitutional. United States v. Malone, 886 F.2d 1162, 1166 (9th Cir.1989).
 Applying this ratio here, we conclude that Hagler distributed the equivalent of ten times the amount of cocaine that Harmelin possessed. Moreover, unlike Harmelin, Hagler had a record of a prior felony conviction. Therefore Hagler's sentence is not grossly disproportionate to his crime and does not violate the Eighth Amendment. Van Winrow, 951 F.2d at 1071.
 
 
 23
 The majority in Harmelin also rejected the argument that a mandatory sentence in non-capital cases violates the eighth amendment. 111 S.Ct. at 2701. Hagler had no right to have the sentencing judge scrutinize his motive or other particular circumstances of his offense.
 
 2. Equal protection and due process
 
 24
 Hagler argues that there is no rational relationship to a legitimate government interest in allowing prior drug offenses to be available for sentencing enhancement purposes regardless of the quantity of drugs involved in such offenses. We upheld section 841(b)(1)(A) against a similar challenge in United States v. Kinsey, 843 F.2d 383 (9th Cir.), cert. denied, 487 U.S. 1223, and cert. denied, 488 U.S. 836 (1988). In that case, defendants asserted that applying section 841(b)(1)(A) would violate equal protection due to the wide disparity among drug enforcement laws in different jurisdictions. 843 F.2d at 393. They argued that "the applicability of the sentence enhancement provision would depend upon the scope of the particular drug enforcement law under which the person was convicted." Id. We rejected that challenge, holding that "the mandatory minimum sentencing provisions in Title 21 U.S.C. Section 841(b)(1)(A) are rationally related to the strong governmental interest in the deterrence of drug abuse and drug trafficking." Id. at 394. Our holding in Kinsey that the sentence enhancement provisions of section 841(b)(1)(A) are rationally related to a legitimate governmental interest forecloses Hagler's equal protection argument.
 
 
 25
 Although it is not altogether clear from his brief, Hagler appears to argue that the section 841(b)(1)(A) violates his due process right to receive an individualized sentence. We have previously rejected this argument, pointing out that "[s]entencing under Section 841(b)(1)(A) is individualized according to quantity and variety of narcotic possessed," as well as "by sentencing courts' discretion beyond the mandatory minimum." Brownlie, 915 F.2d at 528.
 
 
 26
 C. Refusal to Give Missing Witness Instruction
 
 
 27
 Green appeals the district court's refusal to give the jury the missing witness instruction. This instruction explains to the jury that the failure to produce a material witness peculiarly within the control of one party may give rise to the inference that the absent witness's testimony would be adverse to that party. United States v. Bramble, 680 F.2d 590, 591-92 (9th Cir.) (quoting Edward J. Devitt & Charles B. Blackmar, 1 Federal Jury Practice and Instructions, § 17.19 (3d ed. 1977)), cert. denied, 459 U.S. 1072 (1982); see United States v. Long, 533 F.2d 505, 508-09 (9th Cir.) cert. denied, 429 U.S. 829 (1976). The instruction is proper "only if from all the circumstances an inference of unfavorable testimony from an absent witness is a natural and reasonable one." Bramble, 680 F.2d at 592. We have affirmed the refusal to give the missing witness instruction in cases in which defendants requested the instruction due to the failure of a government informant to testify. See, e.g., id. at 591-92; United States v. Noah, 475 F.2d 688, 691 (9th Cir.), cert. denied, 414 U.S. 821, and cert. denied, 414 U.S. 1095 (1973).[1]
 
 
 28
 Green contends that the district court should have given the missing witness instruction because the government failed to call the informant Carter to testify. In arguing that it was peculiarly within the power of the prosecution to produce Carter because Carter was a paid informant, however, Green merely states the obvious. Likewise, in insisting that because his own testimony amounted to a complete defense, he had no obligation to call Carter, he again states the obvious. A bit more subtle is Green's argument that no adverse inference could be drawn from his failure to call Carter because Carter's testimony would contradict neither Green's nor Jones's, neither of which was inconsistent with the other, and therefore would have been merely cumulative. Although this argument might suggest that Carter's absence could not give rise to an inference unfavorable to either party, Green reasons that since the government contended Green's testimony was false, the government should have called Carter as a witness to contradict and impeach Green.
 
 
 29
 For its part, the government rejects Green's characterization of consistency of the testimony of Jones and Green. Because of their inconsistency, the jury could believe only one version of the facts. Therefore, Carter's testimony was unnecessary.
 
 
 30
 We agree that Green was not entitled to the missing witness instruction. The district court approached the issue from the standpoint of availability. In denying the instruction, the court noted that "either side could have called the witness if he was, in fact, parading out there." The issue of a witness's availability is a question of fact for the trial court to decide, Noah, 475 F.2d at 691, and the district court's determination that Carter was equally available to each side was not clearly erroneous. Indeed, at oral argument, Green's counsel conceded that Carter was physically present on the court premises but that for tactical reasons Green chose not to call him. Furthermore, without regard to the consistency or not of the testimony of Jones and Green, the government was not required to contradict or impeach Green's testimony by calling Carter as a witness. It could, and did, rely on the jury's evaluation of Green's credibility. The district court allowed the defendant to comment on the failure of Carter to testify. This is all Green could ask for. We conclude that the district court did not abuse its discretion in declining to give the missing witness instruction.
 
 
 31
 AFFIRMED.
 
 
 
 *
 Honorable Alex Kozinski, Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation
 
 
 **
 Honorable John M. Roll, United States District Judge for the District of Arizona, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Green's proffered instruction read as follows:
 If it is peculiarly within the power of either the prosecution or the defense to produce a witness who could give material testimony on an issue in the case, failure to call that witness may give rise to an inference that his testimony would be unfavorable to that party. However, no such conclusion should be drawn by you with regard to a witness who is equally available to both parties, or where the witness's testimony would be merely cumulative.
 The jury will always bear in mind that the law never imposes on a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.
 This is the same instruction that was held properly to have been denied in Bramble, 680 F.2d at 591-92.