999 F.2d 546
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Santiago TERAN, Eladio Soto Bouza, and Geronimo Teran,
Defendants-Appellants.
 Nos. 91-50790, 91-50791, 91-50798, 92-50485, 92-55955 and 92-55957.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 8, 1993.
Decided July 16, 1993.
 
 Before BROWNING, TANG and BOOCHEVER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Santiago Teran, Geronimo Teran, Eladio Bouza, Nelson Martinez and thirteen other defendants were charged with conspiracy to distribute and distribution of cocaine base (rock cocaine), in violation of 21 U.S.C. §§ 846 and 841(a). Only the Terans, Bouza and Martinez proceeded to trial, and Martinez pleaded guilty to the conspiracy charge after the first day of trial. A jury convicted the Terans and Bouza of conspiracy, Bouza on two counts of distribution, Santiago Teran on three counts of distribution, and Geronimo Teran on one count of distribution. The Terans and Bouza appeal their convictions. In addition, Bouza appeals his sentence and Geronimo Teran appeals the denial of his petition for habeas relief pursuant to 28 U.S.C. § 2255.
 
 DISCUSSION
 I. Challenges to conviction
 
 3
 A. Was there sufficient evidence to convict the appellants of a single conspiracy?
 
 
 4
 If an indictment charges defendants with participation in a single conspiracy, but the evidence instead establishes "multiple, discrete conspiracies, such a variance of proof may be so prejudicial as to require reversal.... Thus the review of such a case involves two inquiries: was there a variance, and if so, was it prejudicial." United States v. Kenny, 645 F.2d 1323, 1334 (9th Cir.) (citations omitted), cert. denied, 452 U.S. 920 (1981).
 
 
 5
 The question of variance is essentially whether sufficient evidence establishes the existence of the single conspiracy charged. Id. at 1335.
 
 
 6
 The evidence need not be such that it excludes every hypothesis but that of a single conspiracy; rather, it is enough that the evidence adequately supports a finding that a single conspiracy exists.... In the instant case, this Court would have to be able to say that no rational trier of fact could have found a single conspiracy on this evidence before we could disturb the jury's finding, implicit in its guilty verdict, that a single conspiracy has been proved.
 
 
 7
 Id. (internal citation omitted).
 
 
 8
 A single conspiracy exists where there is " 'one overall agreement' to perform various functions to achieve the objectives of the conspiracy." United States v. Patterson, 819 F.2d 1495, 1502 (9th Cir.1987) (quotation omitted). Although a "single conspiracy may involve several subagreements or subgroups of conspirators," United States v. Lujan, 936 F.2d 406, 411 (9th Cir.1991) (quotation omitted), and separate acts at separate times should not be confused with separate conspiracies, United States v. Smith, 790 F.2d 789, 795 (9th Cir.1986), there must be sufficient evidence that the defendants acted pursuant to one overall agreement. The evidence is viewed in the light most favorable to the prosecution. Kenny, 645 F.2d at 1335.
 
 
 9
 The government introduced the following evidence at trial. San Diego Police Officer Rawls testified that on October 10, 1990, she negotiated a cocaine deal at Dad's Bar with Eladio Bouza, who later sold her about $300 worth of cocaine base. On October 15, 1990, Rawls and a confidential informant named Renee met Nelson Martinez at Dad's Bar to purchase more cocaine; Martinez referred them to Bouza, who sold Rawls $280 worth of cocaine base.
 
 
 10
 Mario Richardson, a professional paid informant, testified that on December 6, 1990, he met with Santiago Teran at 1231 25th Street, Apt. 9. While driving in Richardson's car, Santiago sold Richardson $500 or $525 worth of cocaine.
 
 
 11
 Richardson further testified that on December 7, 1990, he negotiated a sale with Santiago over the phone. Richardson again met Santiago at 1231 25th St., Apt. 9, Santiago sold him $525 or $550 worth of cocaine base while the two drove around in Richardson's car, and Richardson dropped Santiago off in the 2400 block of "E" Street. Special Agent Love testified that shortly after Santiago was dropped off on "E" Street, Santiago emerged, allegedly with Geronimo Teran.
 
 
 12
 After a phone conversation with Santiago on December 11, 1990, Richardson went to the 1231 25th St. address and met with Santiago and a man Richardson identified as Geronimo Teran. Richardson testified that he bought $2500 worth of cocaine base, and that Geronimo counted the money.
 
 
 13
 Andrew Chambers, another paid confidential informant, testified that he observed Geronimo Teran talking to Martinez outside a grocery store. The conversation could not be overheard, and there was no testimony of an exchange of drugs. Chambers also testified that Geronimo Teran was seen in Cynds Bar, a location frequented by Martinez. No evidence indicates that Teran and Martinez were together in the bar, or that Teran engaged in suspicious activities inside the bar. In fact, Chambers testified that he unsuccessfully attempted to solicit drugs from Geronimo at the bar.
 
 
 14
 The government argues that the Terans' role in the larger conspiracy was proven by Chambers' observation of Geronimo Teran talking to Martinez outside the grocery store and Geronimo's presence at Cynds Bar. Mere association with a conspirator, however, is not sufficient to be convicted of conspiracy. See Kenny, 645 F.2d at 1335.
 
 
 15
 No direct or circumstantial evidence established Geronimo Teran's involvement in criminal activity with Martinez. The government failed to show that the drug transactions involving Bouza were in any way related to the transactions with the Terans. The transactions did not have overlapping participants, and were not united in time and place. Compare United States v. Zemek, 634 F.2d 1159, 1168 (9th Cir.1980) (single conspiracy existed when the defendant's assault and harassment of an IRS informant were in furtherance of a racketeering scheme, were conducted with similar methods, had overlapping participants, and were united in time and place), cert. denied, 450 U.S. 916; 450 U.S. 985; 452 U.S. 905 (1981). See also Kenny, 645 F.2d at 1334-35 (single conspiracy established where each defendant knew or had reason to know of the conspiracy's scope and "had reason to believe that their own benefits were dependent upon the success of the entire venture") ( quoting United States v. Kostoff, 585 F.2d 378, 380 (9th Cir.1978)). We find that no jury could have rationally found that Santiago and Geronimo Teran acted pursuant to the conspiracy charged in the indictment. Their conspiracy convictions are reversed.
 
 
 16
 On the other hand, there is sufficient evidence establishing Bouza's involvement in the charged conspiracy. The government proved that Martinez directed Officer Rawls to Bouza for a cocaine transaction, thus establishing a connection between Bouza and the charged conspiracy involving Martinez. Because sufficient evidence proved Bouza's involvement in the conspiracy charged, he was not prejudiced by any variance between the indictment and proof at trial. We affirm Bouza's conspiracy conviction.
 
 
 17
 B. Was there sufficient evidence to convict Bouza of the two counts of distribution?
 
 
 18
 Bouza argues that because the government's only evidence against him was Rawls' testimony which was impeached, there was insufficient evidence to support his distribution conviction. We disagree. Any issues of credibility were for the jury, and the record supports the conviction for distribution. See United States v. Loya, 807 F.2d 1483, 1489 (9th Cir.1987) (contradictory and inconsistent testimony is sufficient to support a conviction where the jury "resolved the conflicts of evidence in favor of the prosecution's factual theory"). Further, Bouza stipulated that the items purchased from him were controlled substances. Sufficient evidence supports Bouza's conviction on both counts of distribution of cocaine base.
 
 
 19
 C. Did the district court err in denying the appellants' motion for a new trial, based on evidence discovered after trial affecting the credibility of the confidential informant?
 
 
 20
 After trial, defense counsel discovered new evidence affecting the credibility of Mario Richardson, the confidential informant who testified against Santiago and Geronimo Teran.[1] Richardson had been the principal prosecution witness in a 1985 California state criminal case in which a successful entrapment defense had been asserted. The transcripts from the preliminary hearing in that case apparently revealed that Richardson had lied under oath by denying his prior narcotics felony conviction and by testifying that he was not receiving compensation for his activities.
 
 
 21
 The district court denied the motion for new trial. We review de novo challenges to a conviction based on a Brady[2] violation. United States v. Lai, 944 F.2d 1434, 1440 (9th Cir.1991), cert. denied, 112 S.Ct. 947 (1992).
 
 
 22
 At issue here is whether evidence was suppressed by the prosecution. Id. (suppression by the prosecution of favorable evidence, including impeachment evidence, "violates due process where the evidence is material either to guilt or innocence"). The district court found that the prosecutor was unaware of the state case, and thus did not suppress material evidence. The appellants argue that because the Civil Division of the United States Attorney's Office had appeared in the state action to oppose a subpoena duces tecum for Richardson's DEA file and records, the knowledge concerning Richardson's participation in the state case is imputed to the prosecutor because the information was within the control of the United States Attorney's Office, citing United States v. Bryan, 868 F.2d 1032, 1036 (9th Cir.), cert. denied, 493 U.S. 858 (1989).
 
 
 23
 In Bryan, the defendant had been denied discovery of out-of-district documentary evidence which was in the possession of other federal investigative agencies, but of which the prosecutor had knowledge. The court held:
 
 
 24
 [T]he government's obligation under Rule 16(a)(1)(C) should turn on the extent to which the prosecutor has knowledge of and access to the documents sought by the defendant in each case. The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant.
 
 
 25
 Id. at 1036 (internal citation omitted).
 
 
 26
 Bryan does not stand for the proposition that a prosecutor is deemed to have knowledge of everything within the United States Attorney's Office; rather, the focus of the discussion is that a prosecutor is deemed to have knowledge of everything in the same investigation of the defendant. The court stated: "We agree that a federal prosecutor need not comb the files of every federal agency which might have documents regarding the defendant in order to fulfill his or her obligations under Rule 16(a)(1)(C)." Id. Similarly, the prosecutor need not comb the files of the United States Attorney's Office to determine whether there is any existing information about an informant. Only if there is information developed in the investigation at issue, or if the prosecutor has actual knowledge of material information regarding an informant, does the prosecution have a Brady obligation to disclose that information.
 
 
 27
 We uphold the district court's denial of the motion for new trial.
 
 
 28
 D. Did the district court abuse its discretion in refusing to continue the trial date to allow counsel to investigate the background of informant Richardson?
 
 
 29
 The district court ordered the prosecution to make all informants available to the defense no later than ten days prior to trial. Mario Richardson was not produced for an interview until five days before trial. Santiago Teran moved to dismiss the indictment, or in the alternative, to exclude the testimony of Mario Richardson or to continue trial; the district court denied the motion. On appeal, Teran argues that the district court erred by failing to continue the trial.
 
 
 30
 The district court's denial of the motion to continue is reviewed for an abuse of discretion. United States v. Tham, 960 F.2d 1391, 1396 (9th Cir.1991).
 
 
 31
 We do not find an abuse of discretion unless we conclude that the denial was arbitrary and unreasonable in light of four relevant factors: (1) the extent of the defendant's diligence in readying the defense; (2) the likelihood that the continuance would have satisfied the defendant's need; (3) the inconvenience to the court, opposing party, and witnesses; and (4) the extent to which the defendant may have been harmed. To demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice to his defense.
 
 
 32
 Id. (citation omitted).
 
 
 33
 Richardson was identified to defense counsel, his "rap sheet" was presented to defense counsel, and the available Giglio material was furnished to counsel more than ten days before trial. The information regarding Richardson's 1985 state testimony was not discovered until five months after trial, and a continuance of trial would not have necessarily resulted in the discovery of that information. Because the five-day delay did not interfere with the defendants' preparation for trial, and the defendants were not prejudiced, we find that the district court did not abuse its discretion in denying the motion to continue trial.
 
 
 34
 E. Did the district court err in denying the appellants' motion to sever the trials?
 
 
 35
 The appellants failed to renew their motion for severance at the close of evidence, and have thus waived the issue. See United States v. Smith, 893 F.2d 1573, 1581 n. 4 (9th Cir.1990).
 
 
 36
 In order to preserve a Rule 14 motion on appeal, the motion must be renewed at the close of the evidence. Failure to renew a motion for severance under Rule 14 at the close of the evidence suggests that the alleged prejudice from joinder of the offenses did not seem so substantial to appellants in the context of the trial.
 
 
 37
 United States v. Sanchez-Lopez, 879 F.2d 541, 551 (9th Cir.1989). We therefore do not reach appellants' severance claims.
 
 
 38
 F. Did the district court err in denying the appellants' motion for mistrial when codefendant Martinez decided to plead guilty mid-trial?
 
 
 39
 Nelson Martinez decided to plead guilty after the first day of trial. Appellants' motion for mistrial was denied.
 
 
 40
 Appellants argue that denial of the motion for mistrial denied them due process. In effect, they argue that the evidence against Martinez would be used against them in establishing the existence of the conspiracy. However, appellants have not demonstrated that any prejudice resulted from Martinez' mid-trial decision to change his plea and the district court instructed the jury not to infer anything from the absence of Martinez. The denial of the motion for mistrial was not an abuse of discretion.
 
 
 41
 G. Was the admission of Government Ex. 1 an abuse of discretion?
 
 
 42
 Appellants moved to suppress government's Exhibit 1, a binder notebook containing the photographs of 22 people, used by case agent Patrick Shanley to assist the government informants in identifying the people from whom they would make controlled buys. Informant Chambers testified that Geronimo Teran was in photo # 8 and that he had seen Geronimo talking to Nelson Martinez in front of a grocery store. Geronimo has not demonstrated, nor argued, that the admission of Ex. 1 more probably than not tainted the verdict. See United States v. Lee, 846 F.2d 531, 536 (9th Cir.1988) (evidentiary ruling is reviewed for an abuse of discretion, and will not be reversed unless appellants show that it more probably than not tainted the verdict). Also, neither Santiago Teran nor Eladio Bouza were identified in Ex. 1, and thus they experienced no prejudice. Admission of Ex. 1 was not an abuse of discretion.
 
 
 43
 H. Did the district court abuse its discretion by refusing to admit Agent Love's prior misdemeanor conviction?
 
 
 44
 Agent Love was previously convicted for the misdemeanor offense of Assault Under Color of Authority. The district court's refusal to admit the conviction is reviewed for an abuse of discretion. United States v. Charmley, 764 F.2d 675, 677 (9th Cir.1985).
 
 
 45
 Under Rule 609(a)(2), Federal Rules of Evidence, a conviction "shall be admitted if it involved dishonesty or false statement, regardless of the punishment" for the purpose of attacking a witness' credibility. This conviction was for assault and did not implicate Agent Love's honesty. The exclusion of Agent Love's conviction was not an abuse of discretion.
 
 II. Bouza's challenges to his sentence
 
 46
 A. Was Bouza entitled to a jury trial on the existence of prior felony convictions used to enhance his sentence?
 
 
 47
 In United States v. Kinsey, 843 F.2d 383, 392 (9th Cir.), cert. denied, 487 U.S. 1223; 488 U.S. 836 (1988), this court held that sentence enhancements under 21 U.S.C. § 841(a)(1) "do not create criminal charges which necessarily guarantee a person his or her right to a jury trial." Bouza was not entitled to a jury trial on the existence of prior felony convictions used to enhance his sentence to life imprisonment.
 
 
 48
 B. Did the district court err in imposing a life sentence?
 
 
 49
 Bouza argues that he was improperly sentenced to life in prison because the evidence at trial demonstrated multiple conspiracies and he did not conspire with the Terans. The government interprets Bouza's argument as challenging the use of the amount of drugs distributed by the Terans to set his offense level. The district court used only the amounts attributable to Bouza, Martinez, and Martinez' wife. Bouza has not demonstrated that any of these factual findings were clearly erroneous.
 
 
 50
 This court has previously upheld a mandatory life sentence for a person convicted under § 841 who has two or more prior drug felony convictions. United States v. Van Winrow, 951 F.2d 1069, 1070 (9th Cir.1991). Bouza's life sentence is affirmed.[3]
 
 III. Geronimo Teran's § 2255 challenge
 
 51
 Geronimo Teran, represented at trial by retained counsel George Bye, claims that he received constitutionally ineffective assistance of counsel. Bye failed to do any pretrial investigation, did not file any pretrial motions or proposed jury instructions, failed to give an opening statement, and failed to file a sentencing memorandum or objections to the presentence report.
 
 
 52
 Whether a defendant received ineffective assistance of counsel is reviewed de novo. United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991). In order to demonstrate ineffective assistance, a defendant must show both deficient performance by counsel and prejudice to the defense.[4] Id. ( citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). Prejudice is established if "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.
 
 
 53
 George Bye testified at the June 19, 1992 hearing that he twice met with Geronimo's wife, Yolanda Rios: initially to discuss his retainer and then immediately prior to her testimony at trial. Bye testified that he drove through the scene, and that his investigator "did a cursory look over the area. And that's about all, really." Bye stated that he did not do more investigation because "no one had any money to give me for that purpose." Bye did not inquire into the availability of CJA funds for investigation.
 
 
 54
 Geronimo's post-conviction counsel hired an investigator who met with Geronimo's wife, who suggested that Geronimo's brother, Jorge, might have been the brother involved in the December 11 transaction: Jorge looks extremely similar to Geronimo and had prior involvement in drugs. The investigator obtained from a neighbor pictures of the two brothers, which indeed show the striking similarity between the brothers. The neighbor also told the investigator that Jorge had substantially changed his appearance after his brothers' arrest, including shaving his beard and losing weight.
 
 
 55
 Under the circumstances, counsel's failure to conduct a more thorough pretrial investigation fell "below an objective standard of reasonableness." Strickland, 466 U.S. at 688. With the most cursory pretrial investigation and interview of Yolanda Rios, Bye should have found that Geronimo and Jorge Teran looked very similar and could have presented a credible defense that Geronimo was not involved in the transaction. See United States v. Tucker, 716 F.2d 576, 581 (9th Cir.1983) (failure to conduct pretrial investigation and prepare defense constituted ineffective assistance of counsel).
 
 
 56
 Further, Geronimo was prejudiced because "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The only direct evidence against Geronimo Teran is Richardson's testimony that Geronimo Teran was the man he observed counting money on December 11 inside the apartment at 1231 25th St.[5] Counsel's failure to present an obvious defense based on mistaken identity raises the reasonable probability that the jury might have found Geronimo innocent, and undermines our confidence in the verdict.
 
 
 57
 Geronimo Teran's conviction for distribution of cocaine base is reversed and remanded for retrial.
 
 CONCLUSION
 
 58
 The conspiracy convictions of Geronimo Teran and Santiago Teran are REVERSED for insufficient evidence. The denial of Geronimo Teran's motion for habeas relief under 28 U.S.C. § 2255 for ineffective assistance of counsel is REVERSED, and his conviction for distribution of cocaine base is REVERSED and REMANDED for new trial. Eladio Bouza's convictions and sentence are AFFIRMED. The district court's rulings in all other respects are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because Richardson did not testify against Bouza, there is no basis on which Bouza can claim his rights were violated
 
 
 [2]
 Brady v. Maryland, 373 U.S. 83 (1963)
 
 
 [3]
 Bouza also "incorporates" his motion for new trial and supplemental memorandum. However, neither of these memoranda address the propriety of his life sentence
 
 
 [4]
 Certain circumstances are so prejudicial that ineffective assistance of counsel will be presumed. See Swanson, 943 F.2d at 1072. However, counsel's conduct at issue here is governed by the Strickland standard, and the defendant must demonstrate prejudice. Swanson, 943 F.2d at 1073, citing Woodard v. Collins, 898 F.2d 1027, 1029 (5th Cir.1990) (counsel's decision to conduct no pretrial investigation is governed by Strickland ). See also United States v. Birtle, 792 F.2d 846, 848 (9th Cir.1986) (failure to appear at oral argument or file reply brief does not warrant per se rule of prejudice)
 
 
 [5]
 Yolanda Rios testified that she and Geronimo lived at this address